691 So.2d 692 (1997)
Brian SAVOY, Plaintiff-Appellee,
v.
CECIL PERRY IMPROVEMENT, CO., Defendant-Appellant.
No. 96-889.
Court of Appeal of Louisiana, Third Circuit.
February 5, 1997.
Order Amending Decision on Rehearing April 7, 1997.
*695 Shane M. Mouton, Rayne, for Brian Savoy.
Michael W. Whitehead, New Orleans, for Cecil Perry Improvement, Co.
Gregory David Frost, New York City, for intervenor Our Lady of the Lake Hosp., Inc.
Before WOODARD, SULLIVAN and GREMILLION, JJ.
GREMILLION, Judge.
In this workers' compensation case, the defendants, Cecil Perry Improvement Company and its insurer, Louisiana Safety Association of Timbermen, appeal a decision by the hearing officer awarding the plaintiff, Brian Savoy, indemnity benefits and the intervenors, Our Lady of the Lake Hospital, Inc. and Radiology Associates (referred to collectively as OLOL), payment for medical treatment provided. OLOL answered the appeal seeking an increase in penalties and attorney's fees. We affirm in part, reverse in part, and render.

FACTS
Savoy, employed as a truck driver for Perry, received serious injuries when the truck he was operating overturned on June 7, 1993. Savoy was approaching a curve on Louisiana Highway 16, when he claimed he saw a car in the opposing lane of travel cross the center line and enter his lane of travel. In an attempt to avoid a head on collision, Savoy veered his truck to the shoulder. When he tried to bring his truck back onto the road's surface, he was unable to make the curve, and, as a result, his truck crossed the opposing lane of travel and overturned in a roadside ditch. Savoy was transported to the Baton Rouge Medical Center where he was tentatively diagnosed with a non-displaced fracture of the cervical spine.
At the request of Dr. Robert E. Hanchey, a neurosurgeon, Savoy was transported to OLOL. A urine drug screen was performed on Savoy once he reached the hospital, which tested positive for marijuana, cocaine, and benzodiazepine. Savoy told Dr. Hanchey that he had done illicit drugs in the past. An MRI performed on him revealed a probable acute disc rupture with protrusion of the disc into the spinal canal at C6-7. After his examination, Dr. Hanchey determined that Savoy was suffering from a C6-7 fracture subluxation with acute disk rupture and acute radiculopathy. In order to temporarily stabilize Savoy's spine, Dr. Hanchey placed Gardner Wells tongs on him and transferred him to the surgical intensive care unit for overnight observation.
Dr. Hanchey performed surgery on Savoy the following day: an anterior cervical C6-7 microdiscectomy and cadaver graft interbody Smith-Robinson fusion, and a Synthes C6-7 anterior plating. On June 9, 1993, Savoy requested a second drug screen. The urine sample was drawn by the hospital and tested by Smith Kline Beecham. The drug test was positive for marijuana. The medical records reveal that Savoy admitted to a nurse that he took a Valium on the Thursday before the accident, and that he smoked marijuana "on the weekend." Savoy also testified at the workers' compensation hearing that he took the Valium and smoked a marijuana cigarette and that the friend who rolled the cigarette tended to put cocaine in with the marijuana.
As a result of the positive drug screen, Perry refused to pay Savoy's medical expenses beyond the time that his condition "stabilized" and he was transferred out of the emergency room. Due to Perry's refusal to *696 pay, OLOL intended to transfer Savoy to a charity hospital following the surgery. Instead, Savoy asked that he be discharged so that he could recuperate at his mother's home. He was released on June 10, 1993, two days after surgery.
Savoy filed a disputed claim with the Office of Workers' Compensation on August 12, 1993, contesting Perry's denial of benefits. Perry answered Savoy's claim, denying compensation and raising the affirmative defense of intoxication. Motions to intervene in the action were filed by OLOL and Radiology Associates, seeking payment for medical services rendered to Savoy as a result of his accident.
A hearing was held on December 6, 1995, and the hearing officer rendered a decision on March 5, 1996. The hearing officer held that Perry failed to prove that Savoy was intoxicated at the time of the accident or that his intoxication was the proximate cause of the accident. The hearing officer awarded Savoy temporary total disability benefits from the date of the accident until such time that he becomes employed. However, she held that Savoy was not entitled to compensation for the period of time he was or remained incarcerated. With regards to the intervention, the hearing officer awarded both OLOL and Radiology Associates full payment for their medical services, attorney's fees of $3,500.00, and a penalty of twelve percent of the outstanding medical bills. Perry and its insurer suspensively appeal this decision.

ISSUES
Perry raises five assignments of error on appeal. It argues that the hearing officer erred in rejecting Perry's intoxication defense; that accepting the intoxication defense, the hearing officer erred in finding Perry responsible for Savoy's medical treatment once his condition stabilized and was no longer an emergency; that the hearing officer erred in awarding OLOL penalties and attorney's fees; that the hearing officer erred in charging Perry with paying full medical benefits in excess of the schedule contained in La.R.S. 23:1034.2; and that the hearing officer erred in awarding Savoy temporary total disability benefits in the absence of evidence establishing disability. OLOL answered the appeal seeking an increase in the amount of penalty awarded to Radiology Associates, an increase in attorney's fees, and the award of legal interest.

EVIDENTIARY MATTERS
At the outset, we will address issues raised by Perry concerning the hearing officer's decision to admit into evidence the deposition of Dr. John Cobb, an orthopedic surgeon, and her refusal to admit a laboratory report from Smith Kline Beecham.
Dr. Cobb's deposition was introduced by OLOL to assist the hearing officer in determining when Savoy's condition had stabilized sufficiently so that he could be discharged from the acute care facility. See La.R.S. 23:1081(13). OLOL wanted to introduce the deposition as a result of the parties' failure to redepose Dr. Hanchey, whose original deposition was taken prior to OLOL's intervention. Following his treatment of Savoy, Dr. Hanchey moved to Georgia. Three attempts were made to depose him, all failed. OLOL argued that, although Dr. Cobb is not a neurosurgeon, his testimony was relevant because he performs this same procedure. Perry objected on the basis that Dr. Cobb is not a neurosurgeon and because he never personally examined Savoy.
The hearing officer admitted the deposition into evidence finding that, although Dr. Cobb never examined Savoy and would normally not treat this condition, he was a medical expert, thus, his opinion was relevant and would go to the weight of the evidence. The decision to admit a deposition into evidence rests within the sound discretion of the hearing officer. Absent manifest error, her decision will not be reversed on appeal. Faul v. Tilden A. Bonin, Contractor, 95-1236 (La.App. 3 Cir. 8/7/96), 678 So.2d 627, writ denied, 96-2221 (La.11/15/96), 682 So.2d 769; We find no error in the hearing officer's decision. Dr. Cobb is a medical expert who has performed this type of procedure, therefore, he is well qualified to give an opinion on whether Savoy's condition had stabilized after the application of the tongs. The hearing *697 officer committed no abuse of discretion in this instance.
Next, Perry attempted to introduce a laboratory report from Smith Kline Beecham, concerning the drug test requested by Savoy. Perry sought this report pursuant to a subpoena to Smith Kline Beecham. The hearing officer refused to admit the report under the business records exception to hearsay since it contained no signed verification stating that it was a certified copy of all of Smith Kline Beecham's records. Perry proffered the report. Although the hearing officer has great discretion, we find that she erred in this instance. As pointed out by Perry, the results of the drug test were located in OLOL's records, in the exhibits attached to Dr. Cobb's deposition, and in the toxicology reports of both Dr. William J. George (Perry's expert) and Dr. Vincent M. Papa (Savoy's expert). Therefore, when the hearing officer relied on Dr. Papa's report in her reasons for judgment, in actuality, she relied on the Smith Kline Beecham laboratory report. Thus, the entire laboratory report should have been admitted into evidence.

INTOXICATION
An employee injured while in the course and scope of his employment is denied workers' compensation benefits if he was intoxicated at the time of the accident, and the intoxication caused the accident. La.R.S. 23:1081(1)(b). If the employer proves, by a preponderance of the evidence, the employee's use of a controlled substance, then the employer is entitled to a presumption that the employee's injury was caused by the intoxication. La.R.S. 23:1081(8). It is presumed that the employee was intoxicated, if, at the time of the accident, there is evidence of either on or off the job use of a nonprescribed controlled substance by the employee. La.R.S. 23:1081(5). Once the employer proves entitlement to the presumption, the burden shifts to the employee to prove that his intoxication did not cause the accident. La.R.S. 23:1081(12).
In her reasons for judgment, the hearing officer stated:
No evidence was presented that, at the time of the accident, Savoy had used nonprescribed controlled dangerous substances. It is true that the evidence submitted indicates that, at the time of the accident, Savoy had in his body traces of controlled dangerous substances. However, the evidence did not conclusively show that, on the date of the accident, Savoy had consumed, either on or off the job, the controlled dangerous substances identified.
Dr. Vincent Papa reported that, "the presence of THC in the second urine specimen tested on June 9, 1994 scientifically demonstrates that the individual was exposed sometime in the past to Marijuana and does not scientifically demonstrate that the individual is under the influence of Marijuana." The evidence submitted did not show that Savoy was under the influence of controlled dangerous substances, at the time of the accident. Accordingly, the employer has failed in this burden and the presumption of intoxication does not accrue to its favor.
From this, it is obvious that the hearing officer erred as a matter of law by placing the burden of proof on Perry. Once the hearing officer found evidence of Savoy's use of controlled substances,[1] whether on or off the job, she was required to shift the burden to Savoy to prove either that he was not intoxicated or that his intoxication was not a contributing cause of the accident. La. R.S. 23:1081(12); Barker v. Allen Canning Co., 95-252 (La.App. 3 Cir. 10/4/95), 663 So.2d 320, writ denied, 95-2688 (La.1/12/96), 666 So.2d 323. Having found that the hearing officer erred as a matter of law and that the error was prejudicial, we are obliged to conduct a de novo review of this case. Hebert v. Southwest Louisiana Elective Membership Corp., 95-405 (La.App. 3 Cir. 12/27/95), 667 So.2d 1148, writ denied, 96-0277 (La.5/17/96), 673 So.2d 607.

DE NOVO REVIEW
A certified copy of the records of OLOL was submitted as a joint exhibit by *698 the parties.[2] Under La.R.S. 13:3714, drug test results contained within the certified copy of hospital records are admissible without the laying of a proper foundation for their admission. Gore v. City of Pineville, 598 So.2d 1122 (La.App. 3 Cir.), writ denied, 600 So.2d 681 (La.1992). Included in the records were the results of the June 7, 1993 urine drug screen, which tested positive for benzodiazepine, cocaine, and cannabinoid (marijuana), and the final report of the drug test performed at Savoy's insistence on June 9, 1993, which was positive for marijuana metabolites.
In addition to the two drug tests, Perry introduced the testimony of Dr. William J. George, a professor of pharmacology and director of the toxicology center at the Tulane University Medical Center. After reviewing the evidence in this case and the effects of marijuana, cocaine, and benzodiazepines on the system, Dr. George stated:
Because of the described effects including, but not limited to alertness, sensory perception, mental confusion, sedation, as well as excitement, impaired reaction time, fatigue, mood changes, and impaired vision, it is obvious that one's ability to safely operate a motor vehicle may be compromised by the use of either marijuana, cocaine, or a benzodiazepine.
In Mr. Savoy's case, all three drugs were detected in him on the evening of the accident compounding the effects expected from any one agent alone. Mr. Savoy's admitted use of Valium (or Xanax) on the Thursday before the accident and his smoking of marijuana on the Friday prior to the accident are indicative of his active use of these drugs. The finding of cocaine in his urine on the evening of the accident is evidence of active use of cocaine as well. The finding of only marijuana, in his urine two days after the first test is consistent with the pharmacokinetics of these agents and the facts as presented concerning Mr. Savoy's drug use.
Thus, it is my professional opinion as a pharmacologist and toxicologist, that Mr. Brian Savoy was under the influence of drugs at the time of his accident and this impairment was a significant cause of his motor vehicle accident on the evening of June 7,1993.[3]
A copy of the accident report filed by the investigating officer was introduced into the record. In his explanation, the officer stated that Savoy told him two different stories as to how the accident occurred. First that his load shifted as he came into the curve, causing him to lose control of his vehicle. Later, Savoy told the officer that a car came across the centerline into his lane causing him to lose control. There was no other vehicle listed in the accident report. When questioned about this, Savoy testified that he did not remember telling the officer that his load shifted, and that this statement was inaccurate because gravel is a stable load and would not shift. He finally stated that he had no memory of talking to the officer at the accident scene.
Dr. Hanchey noted in his discharge summary that Savoy demanded a number of medications for spasm, nervousness, and pain which appeared to be "in excess of the normal and usual situation. The patient is now being discharged on Lortab 7.5. He is asking for Valium and I am not going to give him this medication. He states that he takes Valium through his sister, for anxiety and nervousness and had taken it for years."
At the hearing, Savoy admitted using drugs in the past. He stated that on the Thursday or Friday before the accident, he took either a Valium or Xanax, which was non-prescribed, to help him sleep. He stated that he had taken Valium or Xanax occasionally for years, at least every other month or every two to three months. Savoy testified *699 that, on the Friday before the accident, he shared a marijuana cigarette with someone at a party. Savoy stated that to the best of his knowledge he had never used cocaine. However, he admitted his friend had a habit of rolling cocaine in with the marijuana so it was possible the marijuana he smoked at the party contained cocaine. Finally, we note that at the time of the hearing, Savoy was incarcerated on two separate convictions for possession of crack cocaine.
In order to benefit from the presumptions found in La.R.S. 23:1081(5) and (8), Perry must prove by a preponderance of the evidence Savoy's use of the noncontrolled substances. Williams v. Louisiana Coca-Cola Co., 94-810 (La.App. 5 Cir. 3/1/95), 652 So.2d 108, writ denied, 95-0797 (La.5/12/95), 654 So.2d 349. Based on the objective medical evidence (the drug screens), his testimony, and the other evidence, we find that more probable than not Savoy had ingested marijuana, cocaine, and benzodiazepine (Valium or Xanax), all three of which were in his system at the time of the accident. It is obvious from all of the evidence that Savoy had a drug problem before the accident, and that this problem continued after his injury as evidenced by his convictions for possession of crack cocaine. Thus, Perry was entitled to the benefit of the presumptions that Savoy was intoxicated at the time of the accident and this intoxication caused the accident. The burden should have shifted to Savoy to rebut the presumption. La.R.S. 23:1081(12).
On the issue of intoxication, Savoy offered only his uncorroborated testimony and the report of Dr. Papa in his case-inchief. He testified that, other than the admitted drug use, he used neither alcohol nor drugs the Saturday or Sunday before the accident. He claimed that during that time he was with his children and they spent both days at the pool in their apartment complex. In further support of his claim, Savoy introduced a report by Dr. Papa, a toxicologist. After reviewing the two drug tests performed on Savoy, Dr. Papa noted that the first test performed on June 7, 1993, was a screen with no gas chromatography mass spectroscopy confirmation of cocaine, marijuana, and benzodiazepine drugs. The second test, performed on June 9, 1993, was a screen with gas chromatographymass spectroscopy confirmation and detected the presence of marijuana. Dr. Papa points out that:
[I]t is a scientific principle in the Forensic Toxicology literature on the effect of the THC and Cocaine on Driving behavior that the presence of THC in the second urine specimen tested on 6/9/9[3] scientifically demonstrates that the individual was exposed sometime in the past to marijuana and does not scientifically demonstrate that the individual is under the influence of Marijuana. Only the demonstration of the THC metabolic in the blood or the serum could scientifically demonstrate this.
True though this statement may be, as Dr. Papa points out, it is merely a scientific principle. It does little to help Savoy rebut the presumption that he was intoxicated at the time of the accident. We recognize that the presence of marijuana or cocaine metabolites in a urine screen does not scientifically demonstrate that the individual was under the influence of those drugs. However, the legislature has specifically created a presumption in favor of the employer if the employee tests positive for certain drugs. Having tested positive for drugs, the presumption shifted the burden of proof to Savoy, requiring him to prove, by a preponderance of the evidence, that he was not intoxicated. He failed to do so. He was further required to prove that the intoxication was not a cause of the accident. Again, he failed in his burden.
We find that the hearing officer erred, as a matter of law, by placing the burden of proof on Perry to prove conclusively that Savoy was intoxicated at the time of the accident. We further find that Savoy failed to rebut the presumption by the introduction of any competent evidence, other than his own self-serving testimony, that, more probable than not, he was not intoxicated at the time of the accident or that his intoxication did not cause the accident. The decision of the hearing officer is reversed and judgment will be rendered in favor of Perry.

*700 DISABILITY BENEFITS
No compensation is allowed for an injury resulting to an employee as a result of his intoxication. La.R.S. 23:1081(1)(b). Because we find that Savoy failed to overcome the presumption of intoxication, the hearing officer erred in awarding him temporary total disability benefits. Her decision will be reversed and judgment will be rendered in Perry's favor. Therefore, discussion on Perry's fifth assignment of error is unnecessary.

MEDICAL TREATMENT
Perry's second assignment of error alleges that the hearing officer erred in awarding OLOL full payment for medical services rendered to Savoy. Perry argues that once Dr. Hanchey placed the Gardner Wells tongs on Savoy and transferred him to the surgical intensive care unit, his condition had stabilized and, pursuant to La.R.S. 23:1081(13), it was no longer responsible for his medical care. This issue was not addressed by the hearing officer since she held that Perry failed to prove that Savoy was intoxicated at the time of the accident.
La.R.S. 23:1081(13) provides:
In the event a health care provider delivers emergency care to an injured worker later presumed or found to be intoxicated under this Section, the employer shall be responsible for the reasonable medical care provided the worker until such time as he is stabilized and ready for discharge from the acute care facility, at which time the employer's responsibility shall end for medical and compensation benefits.
Thus, if the employer proves that the employee's intoxication caused his accident, it is only responsible for reasonable medical care provided to the employee until his condition stabilizes and he is ready for discharge from the acute care facility.
In this instance, Savoy was transported to the Baton Rouge Medical Center from the accident scene and then to OLOL. When he arrived at that hospital, he was seen and evaluated by Dr. Hanchey, who found that Savoy had significant disease at C6-7, with an acute disc rupture and instability. With regards to the instability at C6-7, Dr. Hanchey planned to perform, at the first elective opportunity, an anterior microsurgical radical discectomy followed by an inner body fusion and synthesis plating. Dr. Hanchey placed tongs on Savoy's head to stabilize his spine and prevent further slippage, attached fifteen pounds of traction, and placed him in the surgical intensive care unit for overnight observation.
In explaining why surgery was performed at the first elective opportunity the following day instead of that night, Dr. Hanchey stated that since there was no progression of Savoy's neurological condition, he waited until he had his best equipment and people available to perform the surgery. He also stated that after the placement of the tongs, Savoy's condition had stabilized.
The next day, Dr. Leo P. Blaize, III performed an internal medicine consultation on Savoy, at the request of Dr. Hanchey. Dr. Blaize noted in his report that Savoy was scheduled to have a stabilization procedure that day and that he was asked to give Savoy a pre-operative medical clearance. Dr. Blaize found that Savoy was in a stable medical condition for the planned neurosurgery and anesthesia and that he was an acceptable risk.
Dr. Cobb testified that when Savoy reached OLOL, his condition was stable, in the sense that his vital signs were stable and he was not at risk of losing his life. Despite not finding this a life threatening situation, Dr. Cobb opined that surgery was required within twenty-four hours to prevent serious permanent impairment to Savoy. With regards to the decision to perform the surgery the next day, Dr. Cobb found Dr. Hanchey's approach to be fairly standard. If Savoy's condition had been an actual emergency, in the terms of a progressive spinal cord compression and loss of function, Dr. Cobb would have operated that night.
Dr. Cobb described the Gardner Wells tongs as a temporary method of stabilizing the spine. He stated that if there are concerns of loss of stability of the spine, tongs are used as a temporary holding device until surgery can be performed. When questioned about the earliest he would have discharged Savoy, Dr. Cobb stated that the day *701 Savoy was discharged, June 10,1993, was the earliest possible date. He also testified that an emergency room, standing alone, is not an acute care facility, but rather is part of such a facility. Finally, Dr. Cobb did not consider moving a patient from the emergency room to a hospital room (the surgical intensive care unit) discharge from the acute care facility.
We find that, under the terms of La.R.S. 23:1081(13), Savoy's condition did not stabilize until surgery was performed on him to permanently stabilize his spine. Although all doctors stated that Savoy's condition had stabilized prior to surgery, we agree with Dr. Cobb that this was with regards to the risk of loss of life. The placement of tongs on Savoy's head was merely a temporary means of stabilizing his spine until permanent stabilization could be obtained through surgery.
Nor do we find that moving Savoy from the emergency room to the surgical intensive care unit constituted discharge from the acute care facility. Under these circumstances, a patient who has suffered a severe spinal injury and is immobilized by the insertion of tongs into his head, with fifteen pounds of weight attached as traction, is not stabilized and ready for discharge from the acute care facility. Considering the above, we find that Savoy's condition stabilized after surgery was performed on him and he was discharged on June 10, 1993. Pursuant to La.R.S. 23:1081(13), Perry is responsible for all medical expenses incurred by Savoy prior to his discharge. The decision of the hearing officer is affirmed and this assignment of error is dismissed.

PENALTIES AND ATTORNEY'S FEES
In its third assignment of error, Perry argues that the hearing officer erred in awarding OLOL penalties and attorney's fees. Perry lists three reasons why the hearing officer erred. First, under the law in effect on the date of Savoy's accident, health care providers were not entitled to attorney's fees and penalties. Next, its actions were not arbitrary and capricious because it relied on the results of the positive drug test to deny Savoy medical benefits. Finally, its actions were not arbitrary and capricious because it believed that Savoy's condition had stabilized once the tongs were applied to his head and he was moved from the emergency room to the surgical intensive care unit, based on the medical records and Dr. Hanchey's testimony.
OLOL argues that even though La. R.S. 23:1201(F)(4) was not enacted until 1995, it still applies to a claim based on a prior injury, citing as authority Resweber v. Haroil Construction Co. 94-2708 (La.9/5/95), 660 So.2d 7. In Resweber, the supreme court, in a footnote, stated that the triggering mechanism, with regards to La.R.S. 23:1208 and 1208.1 governing misrepresentations, was the date of the false statement and not the law in effect on the date of the accident.[4]
Because we find that Perry's actions were not arbitrary and capricious, we need not address OLOL's argument. An employer or insurer will only be responsible for penalties and attorney's fees if it fails to reasonably controvert a workers' compensation claim, and if its failure to pay benefits is arbitrary, capricious, or without probable cause. La.R.S. 23:1201, 1201.2. A claim is considered reasonably controverted if the employer or its insurer had sufficient factual and medical information upon which to base a decision to terminate benefits. Courville v. Omni Drilling, 96-174 (La.App. 3 Cir. 7/10/96), 676 So.2d 861, writ denied, 96-2073 (La. 11/8/96), 683 So.2d 276. An employer's refusal to pay medical expenses is reasonable if it was entitled to rely on the presumption of intoxication arising from a positive drug test. Barker, 95-252; 663 So.2d 320; Austin v. Fibrebond Corp., 25,565 (La.App. 2 Cir. 2/23/94), 638 So.2d 1110, writ denied, 94-1326 (La.9/2/94), 643 So.2d 149. "Whether the refusal to pay workers' compensation benefits warrants imposition of penalties and attorney's fees is a factual question that will *702 not be disturbed in the absence of manifest error." Barker, 95-252; 663 So.2d at 322.
We find that the hearing officer committed manifest error in awarding OLOL penalties and attorney's fees as a result of Perry's refusal to pay Savoy's medical expenses after he was transferred out of the emergency room. Perry's refusal to pay was based on the results of a positive drug screen and its belief that his condition was stabilized after the application of the tongs. Since it was entitled to the presumption of intoxication, and a genuine dispute as to the legislative intent of the meaning of "stabilized and ready for discharge from the acute care facility" was at issue, its refusal to pay was reasonable. La.R.S. 23:1081(13). Where there is a serious defense presented in good faith, it is inappropriate to assess statutory penalties and attorney's fees. Clifton v. Ditto's Apparel, 95-1654 (La.App. 3 Cir. 5/8/96), 673 So.2d 1372, writ denied, 96-1478 (La.9/20/96), 679 So.2d 437. The decision of the hearing officer is reversed.[5]

REIMBURSEMENT SCHEDULE
In its final assignment of error, Perry argues that the hearing officer erred in awarding OLOL full payment of medical expenses in excess of the reimbursement schedule in La.R.S. 23:1034.2. However, there was no evidence or testimony elicited at the workers' compensation hearing on the issue of whether the services rendered by OLOL were in excess of the schedule. All that was admitted into the record were copies of OLOL and Radiology Associates' bills.
La.Code Civ. P. art. 2164 states that "[t]he appellate court shall render any judgment which is just, legal, and proper upon the record on appeal...."
[O]rdinarily issues not passed on by the trial court are not reviewed by the appellate court, but the appellate court, in discharging its duty to render judgment which is just, legal and proper upon the record, has authority to consider any legal point or theory presented in the case, when the record contains all the necessary evidence to determine the question, even though no ruling was made on that issue by the trial court, LSA-C.C.P. Article 2164, and Comment a under that article.
Placid Oil Co. v. Taylor 313 So.2d 626 (La. App. 3 Cir.), writ granted and remanded for rehearing, 318 So.2d 40(La.), on remand, 325 So.2d 313 (La.App. 3 Cir.1975); writ denied, 329 So.2d 455 (La.1976). An appellate court should not make an initial fact-finding determination when there is nothing before the court on appeal due to the failure to raise the issue before the trial court. Lutz v. Jefferson Parish School Bd., 503 So.2d 106 (La. App. 5 Cir.1987), appeal after remand, 565 So.2d 1071 (La.App. 5 Cir.1990). Because there is no evidence in the record concerning this issue, we dismiss this assignment of error.

CONCLUSION
For the foregoing reasons, the decision of the hearing officer is reversed in part and judgment is rendered in favor of the defendants, Cecil Perry Improvement Co. and Louisiana Safety Association of Timbermen, on the issue intoxication and disability benefits. The award of statutory penalties and attorney's fees to the intervenors, Our Lady of the Lake Hospital, Inc. and Radiology Associates, is also reversed. Finally, the decision of the hearing officer is affirmed in part on the issue of the payment of full medical benefits to Our Lady of the Lake Hospital, Inc. and Radiology Associates. The costs of this matter are to be assessed twenty-five percent to Brian Savoy, twentyfive percent to Cecil Perry Improvement Co. and Louisiana Safety Association of Timbermen, and twenty-five percent each to the intervenors.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.

ON REHEARING
GREMILLION, Judge.
On rehearing, the defendant, Cecil Perry Improvement Company, urges us to *703 reconsider our dismissal of its assignment of error, which argued that the hearing officer erred in awarding Our Lady of the Lake Hospital, Inc. full payment of its medical expenses in excess of the reimbursement schedule. La.R.S. 23:1034.2 In our original opinion, we declined to make an initial factfinding determination on appeal since Cecil Perry failed to present evidence of the reimbursement schedule. However, after further consideration, we find that the proper remedy is to remand the matter to the hearing officer for a determination consistent with La.R.S. 23:1034.2, which requires the director of the Office of Workers' Compensation to establish and promulgate a reimbursement schedule, which includes fees for hospital care and services and medical and surgical treatment. La.R.S. 23:1034.2(D) also provides that fees in excess of the reimbursement schedule shall not be recoverable against the employee, employer, or workers' compensation insurer.
For the foregoing reasons, our original opinion is amended to reflect that the matter is remanded to the hearing officer for findings consistent with this opinion.
NOTES
[1] Marijuana (marihuana) is a Schedule I drug and cocaine is a Schedule II drug.
[2] The records, which were admitted as a joint exhibit by all of the parties, do not contain a signed certification verifying that these are a true and correct copy of OLOL's records. However, no objection was made by either party. When the clerk for the Office of Workers' Compensation was contacted, she was unable to locate the original copy of this exhibit. However, the hearing officer's notes state that a certified copy of the records was introduced into evidence.
[3] In his report, Dr. George states that Savoy's accident occurred on the evening of June 7, 1993. However, the accident occurred at approximately 10:10 A.M.
[4] We agree with the footnote in Resweber and would analogize it to the La.R.S. 23:1201(F)(4) in that the triggering mechanism for attorney's fees is not the date of the accident, but the time when payment was refused. Since we reverse for other reasons, we do not conclude when that event occurred.
[5] Because we find that the hearing officer erred in awarding penalties and attorney's fees, we need not address OLOL's answer to appeal.