STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**15-921**

TIMOTHY SCHOUEST, JR.

VERSUS

ACADIAN CONSTRUCTION SERVICES

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION – DISTRICT 04
PARISH OF VERMILION, NO. 14-03503
ADAM C. JOHNSON, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

**ULYSSES GENE THIBODEAUX**
**CHIEF JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, Jimmie C. Peters, Billy Howard Ezell, and David Kent Savoie, Judges.

**EZELL, J., dissents in part and concurs in part and assigns written reasons.**

**AFFIRMED IN PART; REVERSED IN PART.**

**Rémy A. M. Jardell**
**6256 St. John Street**
**Lafayette, LA 70501**
**Telephone: (337) 267-0985**
**COUNSEL FOR:**
     **Plaintiff/Appellant - Timothy Schouest, Jr.**

**Misti L. Bryant**
**Guglielmo, Lopez, Tuttle, Hunter & Jarrell, L.L.P.**
**P. O. Drawer 1329**
**Opelousas, LA 70571-1329**
**Telephone: (337) 948-8201**
**COUNSEL FOR:**
     **Defendant/Appellee - Acadian Construction Services**

**THIBODEAUX, Chief Judge.**

Timothy Schouest appeals a judgment of the Office of Workers' Compensation which denied his claim for indemnity benefits and medical expenses. The workers' compensation judge concluded his employer, Acadian Construction Services, had established that intoxication was a cause of his workplace accident. For the following reasons, we affirm the finding of intoxication and reverse the judgment ordering reimbursement of medical benefits.

## I.

## ISSUES

We must determine:

(1)     whether the trial court erred in excluding Schouest's deposition testimony;

(2)     whether Schouest was injured in the course and scope of his employment with Acadian Construction Services and whether his use of marijuana the night before his work injury was the cause-in-fact of his injury;

(3)     whether a presumption of intoxication was rebutted by the testimony and medical evidence presented by Schouest;

(4)     whether Schouest is entitled to indemnity, medical benefits, penalties and attorney fees.

## II.

## FACTS AND PROCEDURAL HISTORY

Timothy Schouest was employed by Acadian Construction Services as a field-working supervisor. His job entailed erecting buildings for painting and blasting equipment. On March 24, 2014, Schouest started a job at ExPert Riser in

Fourchon. Justin Bell was assisting him on the job. When the men arrived on the jobsite, they began unloading crates and sorting the panels to be used in constructing a paint booth. Later that evening, Schouest retired to his camper. He testified that between 8:00 p.m. and 9:00 p.m. that evening, he consumed four or five mixed drinks and smoked one marijuana joint.

The next morning, at approximately 6:00 a.m. on March 25, 2014, Schouest and Bell began constructing the paint booth. Shortly afterwards, the men began arguing and Bell left the jobsite. Schouest continued constructing on his own, and was injured while installing a six-foot by thirty-inch wide, eighteen-gauge panel. The panel weighed between twenty and thirty pounds, and while attempting to attach the panel to two horizontal beams, it slid and severely cut his right hand.

Schouest reported the accident to Martin Valdez, the coatings supervisor with ExPert Riser at the time. Schouest testified that because he did not want to wait for an ambulance, he drove himself to Lady of the Sea General Hospital in Cut Off, Louisiana. Schouest was diagnosed with a flexor tendon laceration to his right thumb. His thumb was sutured and splinted, and he was prescribed pain medication. He was thereafter advised to follow up with a hand surgeon in Lafayette the next day.

The next day, on March 26, 2014, Schouest went to see Dr. Barry Henry, an orthopedic surgeon in Lafayette. Dr. Henry explained that surgery was necessary to repair a nonfunctioning flexor of the right thumb. Although Schouest is left-hand dominant, he uses his right hand for manual labor. Surgery to repair the flexor pollicis longus and the ulnar digital nerve in his right thumb was performed on March 28, 2014. On April 24, 2014, a pin placed in his right hand

during surgery was removed and Dr. Henry noted that his hand was healing well and ordered hand therapy.

On April 24, 2014, Valerie Guntz, an adjuster with Summit Claims Center who was handling Schouest's workers' compensation claim, sent Schouest a letter informing him that a drug test taken at the hospital the day of his accident was positive for cannabinoid intoxication, i.e. marijuana. Consequently, all future medical benefit payments and wage compensation benefits were discontinued.

Schouest timely filed a disputed claim for compensation. Acadian Construction Services answered the claim asserting the affirmative defense of intoxication. It later amended its answer to include a reconventional demand seeking to recover medical benefits of $22,808.72 and indemnity benefits of $2,271.04 that it paid to Schouest.

The workers' compensation judge (WCJ) held that Acadian Construction Services established Schouest's intoxication at the time of the accident, entitling it to the presumption that the accident was caused by intoxication. The WCJ further held that Schouest failed to meet his burden of proof in establishing that the accident was not caused by his intoxication. The WCJ concluded that Acadian Construction Services' responsibility for medical care ceased after Schouest was discharged from Lady of the Sea General Hospital on March 25, 2014, and, therefore, had no further responsibility for medical and compensation benefits. The court ordered reimbursement of medical benefits in the amount of $22,808.72 and compensation benefits in the amount of $2,271.04. Schouest now appeals.

**Introduction of Deposition**

We must first address an evidentiary matter raised by Schouest. Schouest claims the WCJ erred when he did not allow him to introduce his own deposition testimony as further proof of his credibility.

"A ruling on admissibility of evidence is a question of law and is not subject to the manifest error standard of review." *Trascher v. Territo*, 11-2093, p. 4 (La. 5/8/12), 89 So.3d 357, 362 (citing 19 FRANK L. MARAIST, CIVIL LAW TREATISE: EVIDENCE AND PROOF § 2.10 AT 36 (2D ED. 2008)).

Louisiana Code of Civil Procedure Article 1450 provides for the use of depositions at trial, in pertinent part:

> A. At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the Louisiana Code of Evidence applied as though the witnesses were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:
>
> (1) Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness.
>
> . . . .
>
> (3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:
>
> (a) That the witness is unavailable;
>
> (b) That the witness resides at a distance greater than one hundred miles from the place of trial or hearing or is out of the state, unless it appears that the absence of

the witness was procured by the party offering the deposition[.]

Schouest sought to introduce his deposition testimony as proof of his credibility, and not to impeach his testimony as required by La.Code Civ.P. art. 1450(A)(1). Schouest was also available and did testify at trial, therefore making his deposition testimony inadmissible pursuant to La.Code Civ.P. art. 1450(3). Furthermore, there is no suggestion that Schouest was not forthcoming about his use of marijuana or that he lacked credibility. Therefore, the WCJ properly excluded Schouest's deposition.

**Intoxication Defense**

Schouest argues he was not intoxicated at the time he suffered his injury. He contends that he presented sufficient testimony and evidence to rebut the presumption of intoxication. He first argues that his accident occurred more than twelve hours after he smoked a marijuana cigarette. He further claims that as a regular marijuana smoker his drug test results were elevated, though not as egregiously as the toxicologist attempted to indicate.

Louisiana Revised Statutes 23:1081 provides an employer with defenses to a claim for compensation caused by a work-place injury. Specifically, La.R.S. 23:1081(1)(b) provides that an employer is not liable for an injury caused by an injured employee's intoxication unless the intoxication was in pursuit of the employer's business or was procured by the employer who encouraged its use during work hours. Furthermore, an employer is entitled to a presumption that the employee was intoxicated if there is evidence of on or off the job use of a non-prescribed controlled substance as defined in 21 U.S.C. 812, Schedules I, II, III,

IV, or V. La.R.S. 23: 1081(5). However, La.R.S. 23:1081(12) also provides that this presumption is rebuttable:

> Notwithstanding any language to the contrary, once the employer has met the burden of proving intoxication at the time of the accident, it shall be presumed that the accident was caused by the intoxication. The burden of proof then is placed upon the employee to prove that the intoxication was not a contributing cause of the accident in order to defeat the intoxication defense of the employer.

A determination by a workers' compensation judge that an employee failed to rebut the presumption of intoxication is a factual finding that will not be overturned absent manifest error. *Romero v. La. Commerce & Trade Ass'n*, 11-1533 (La.App. 3 Cir. 7/13/12), 96 So.3d 699, *writ denied*, 12-1852 (La. 11/9/12), 100 So.3d 838.

> Our court reviews the factual findings of a workers' compensation court under the manifest error or clearly wrong standard of review. *Smith v. Louisiana Dep't of Corrections*, 93-1305 (La.2/28/94); 633 So.2d. 129. In applying the manifest error-clearly wrong standard, we must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Stobart v. State*, D.O.T.D., 617 So.2d 880 (La. 1993).

*Romero v. Northrop-Grumman*, 01-24, p. 6 (La.App. 3 Cir. 5/39/01), 787 So.2d 1149, 1153, *writ denied*, 01-1937 (La. 10/26/01), 799 So.2d 1144.

Schouest testified that he has worked many jobs alone before. He also admitted that he has smoked marijuana three or four times a week since he was eighteen years old. However, he stated that he has never smoked on the job and did not feel impaired on the day of the accident. He explained that he had tested positive for marijuana a few times while working, but that Acadian Construction

Services simply told him to clean up and test again. He was never relieved of his work duties and did not feel that the use of marijuana affected his abilities at work.

Valdez testified that he has worked with Schouest before this particular job, and that he never perceived Schouest to be intoxicated on the job. Joey Anzalone, the owner/manager of Acadian Construction Services, testified that Schouest was a valuable employee. Anzalone admitted that a smaller paint booth can be set up by one person but that this was a bigger job which required two men. He also testified that Schouest was not required to continue working on the job once Bell left. Anzalone further confirmed that the company had allowed Schouest to continue working in the past after he tested positive for marijuana, requiring him to take the test again after he discontinued using marijuana.

In rebuttal, Acadian Construction Services presented the testimony of Dr. William George, an expert in the field of pharmacology and toxicology. Dr. George reviewed the urine drug test taken by Schouest, which indicated 398 ng per ml of tetrahydrocannabinol metabolite, or marijuana. Dr. George testified that Schouest was a marijuana user, and that he had significant levels in his system. He further explained that the high level indicated use of marijuana within hours prior to testing, in addition to repeat use of the drug. Dr. George opined that the high level also indicated that Schouest used marijuana even closer in time to the accident than he claimed he did. He testified that unless Schouest smoked after 9:00 p.m. on the evening prior to the accident, he could not understand how the level of marijuana in his system was so high.

Dr. George explained that there are effects of marijuana long after the euphoric effects have disappeared. The maximal effects of marijuana are twenty minutes to an hour. The euphoric effect is two to three hours. The "high" lasts

three to four hours, and the more prolonged effects last five to six hours. Reaction time issues, impaired judgment, and sustained attention issues continue after six hours. With repeated heavy use, a person experiences issues with attentiveness and cognition that last well beyond twenty-four hours. Dr. George testified that Schouest was impaired at the time of the accident.

Testimony also revealed that protective gloves are available for Schouest to use while working with sheet metal. Valdez testified he always reminded Schouest to wear the gloves, but Schouest refused to because it was hard to use his fingers to tighten nuts and bolts. Schouest admitted that fingerless gloves are also available for his use. He testified, however, that they would have been useless on the day of the accident because his thumb was cut.

While there was testimony that Schouest did not appear intoxicated at the time of the accident, "it is not necessary for an employee to be intoxicated to the point of helplessness in order to be deprived of compensation." *Cordon v. Parish Glass of St. Tammany, Inc.*, 14-475, p. 7 (La.App. 1 Cir. 12/23/14), 168 So.3d 633, 639 (quoting *Johnson v. EnviroBlast*, 01-200, p. 7 (La.App. 1 Cir. 12/28/01), 804 So.2d 924, 928).

Based on Dr. George's testimony, the WCJ could have determined that Schouest smoked marijuana later in the evening than Schouest claimed. As a result, the WCJ was presented with evidence that Schouest's judgment was impaired, such as when he continued a large job without help. Furthermore, the WCJ could have also concluded that Schouest's reaction times were impaired at the time of the accident. Based on the testimony and evidence, we find no manifest error in the WCJ's determination that Schouest was intoxicated at the time of the accident and that his intoxication caused the accident.

8

**Medical Expenses**

The WCJ determined that Acadian Construction Services' responsibility for medical care ceased after Schouest was discharged from Lady of the Sea General Hospital. Schouest argues that the trial court erred in ordering him to reimburse Acadian Construction Services $22,808.72 in medical expenses. We agree.

Louisiana Revised Statutes 23:1081(13) provides:

> In the event a health care provider delivers emergency care to an injured worker later presumed or found to be intoxicated under this Section, the employer shall be responsible for the reasonable medical care provided the worker until such time as he is stabilized and ready for discharge from the acute care facility, at which time the employer's responsibility shall end for medical and compensation benefits.

Once an employer establishes that the employee's intoxication was the cause of his accident, the employer is only responsible for reasonable medical care until the employee's condition is stabilized and he is ready for discharge from an acute care facility. *Savoy v. Cecil Perry Improvement, Co*., 96-899 (La.App. 3 Cir. 2/5/97), 691 So.2d 692; *Cordon*, 168 So.3d 633.

Schouest argues that the lacerated tendons and nerves in his right hand were severe enough to require immediate surgery and that he was not fully stabilized until the surgery was performed. While La.R.S. 23:1081(13) does not require that the employer fully repair or cure the employee's condition, it *does* require that the employee's condition be stabilized to the point that he can be discharged.

In *Savoy*, an employee had tongs placed on his head as a temporary means of stabilizing his spine until further stability could be obtained through

surgery. Doctors testified that while the employee's condition was deemed "stable," he was only stable "in the sense that his vital signs were stable and he was not at risk of losing his life." *Savoy*, 691 So.2d at 700. This court determined that pursuant to La.R.S. 23:1081(13), the employee's condition had not stabilized until surgery was performed on him to permanently stabilize his spine.

Here, the procedure performed at Our Lady of the Sea General Hospital temporarily stabilized Schouest until he could permanently be stabilized through surgery. The medical records from Our Lady of the Sea General Hospital read: "Follow up with doctor need hand surgery tomorrow [sic]. will see in lafayette tomorrow [sic]." Schouest was also prescribed fifteen Hydrocodone pills for pain, and was instructed to report to Lafayette Surgical Specialty Hospital the next day. Dr. Henry's medical records state that Schouest had "decreased sensation on the ulnar border of his thumb." Dr. Henry then inserted a pin into Schouest's thumb.

Moreover, Lafayette Surgical Specialty Hospital's records state that Schouest was brought to the hospital "after Worker's compensation [sic] approval [was] obtained." The adjuster's April 24, 2014 letter to Schouest explained that *future* benefits would be denied and the company was "unable to approve payment for any other services incurred after [ ] 4/23/24." However, the accident occurred approximately one month earlier, on March 25, 2014, with surgery performed on March 28, 2014.

We find Schouest's condition had not yet stabilized until after surgery was performed in Lafayette. The WCJ, thus, erred in ordering Schouest to reimburse Acadian Construction Services for medical expenses paid on his behalf following his discharge from Lady of the Sea General Hospital.

10

**Attorney Fees**

Acadian Construction Services filed an answer to the appeal seeking attorney fees for work necessitated by this appeal. It was not awarded attorney fees in the lower court.

Generally, "attorney fees are not allowed in Louisiana unless they are authorized by statute or provided for by contract." *Langley v. Petro Star Corp. of La.*, 01-198, p. 3 (La. 6/29/01), 792 So.2d 721, 723 (quoting *Sharbono v. Steve Lang & Son Loggers*, 97-110, p. 7 (La. 7/1/97), 696 So.2d 1382, 1386). "Awards of attorney fees in workers' compensation cases are essentially penal in nature, and are intended to deter indifference and undesirable conduct by employers and insurers towards injured employees." *Langley*, 792 So.2d at 723 (quoting *J.E. Merit Constructors, Inc. v. Hickman*, 00-943, p. 5 (La. 1/17/01), 776 So.2d 435, 438).

Acadian Construction Services cited no statute which grants an employer the right to attorney fees in workers' compensation cases. This is because attorney fees under the workers' compensation scheme are essentially penalties awarded to claimants when employers and insurers demonstrate undesirable behavior in handling claims. Therefore, we find Acadian Construction Services is not entitled to an award of attorney fees.

V.

**CONCLUSION**

For the aforementioned reasons, we affirm the judgment of the Office of Workers' Compensation as to the appellant's intoxication as the cause-in-fact of his injury and the denial of benefits and the employer's request for attorney fees.

11

We reverse as to Schouest's repayment of medical expenses to Acadian Construction Services. Costs of this appeal are assessed to appellee Acadian Construction Services.

**AFFIRMED IN PART; REVERSED IN PART.**

TIMOTHY SCHOUEST, JR.

VERSUS

ACADIAN CONSTRUCTION SERVICES, LLC

**EZELL, Judge,** concurring in part and dissenting in part.

I agree with the majority's disposition of all but one of the issues in this matter, the payment of medical expenses pursuant to La.R.S. 23:1081(13). The WCJ ordered Mr. Schouest to reimburse Acadian Construction Services $22,808.72 in medical expenses. The WCJ found that Acadian Construction Services' responsibility for medical care ceased after Mr. Schouest was discharged from the hospital. This finding was subject to the manifest error standard of review. There is evidence in the record which supports the WCJ's finding that Mr. Schouest was stabilized when he was discharged.

Louisiana Revised Statutes 23:1081(13) does not require that the employer fully repair or cure the employee's condition. All that is required is that the employee's condition is stabilized to the point he can be discharged. TABER'S CYCLOPEDIC MEDICAL DICTIONARY 1820 (18th ed. 1997) defines a patient in stable condition when "the patient's disease process has not changed precipitously or significantly."

Mr. Schouest was discharged from the hospital the same day of the accident. Following the suturing and splinting of his thumb, the hospital records indicate that he was stable with no complications. His condition at departure was listed as

"improved and stable."  Mr. Schouest agreed that he was in stable condition when he was discharged.  While Mr. Schouest required surgery to his right hand to repair it, this surgery was not necessary to stabilize his condition.  Furthermore, as noted by the majority, Mr. Schouest is left-hand dominant.  For these reasons, I find no error in the trial court's determination that Mr. Schouest is required to reimburse Acadian Construction Services the medical expenses it paid on his behalf following his discharge from Lady of the Sea General Hospital.