WHIPPLE, Judge.
Defendants, Capital Steel Company and Highlands Insurance Company, appeal the judgment of the hearing officer in favor of plaintiff, Johnny A. Thompson, awarding compensation benefits and medical expenses. We amend the judgment of the hearing officer, and as amended, we affirm.
FACTS AND PROCEDURAL HISTORY
On April 9, 1990, Johnny A. Thompson filed a Disputed Claim for Compensation (LDOL-WC 1008 petition) with the Office of Worker’s Compensation Administration.[1] Thompson sought compensation benefits and medical expenses for an on-the-job injury to his right hand from an accident occurring on March 15, 1990.
The defendant, Capital Steel Company, answered the claim admitting that the accident occurred, but asserting as an affirmative defense that due to claimant’s intoxication at the time of the accident, Thompson was not entitled to compensation, pursuant to LSA-R.S. 23:1081.
A pre-trial conference was held on October 18, 1990. The parties stipulated that: (1) Thompson was employed by Capital Steel on the date of the accident and was injured in the course and scope of his employment; (2) Capital Steel did not pay worker’s compensation while plaintiff was unable to work; (3) the appropriate weekly compensation rate, if owed, is $208.84; and (4) defendants did not pay medical expenses incurred as a result of the accident. A hearing was conducted on January 9, 1991 and April 12, 1991.[2]
In support of their defense that plaintiff was intoxicated, defendants presented the testimony of Jim Bollinger, James Callies, Wanda Vaughn, and James Richardson.
Bollinger is the vice-president of marketing and administration at La Med Clinic, the facility where Thompson was first treated for his injuries and a urine sample was collected for testing. Bollinger was qualified as an expert in the procedures for collection of samples for drug screens and compliance with drug testing guidelines set forth by the National Institute on Drug Abuse (NIDA).
*180 Bollinger testified that he directly supervises the drug testing process at La Med Clinic. He testified at length regarding the procedures required by NIDA, and stated that the procedures utilized by La Med Clinic and the site facility where the tests were performed complied with the prevailing guidelines established by NIDA. Additionally, he discussed at length the monitoring procedures used at La Med Clinic to assure compliance with the guidelines.
Wanda Vaughn, an LPN, was employed by La Med Clinic, and collected the urine specimen from Thompson. She testified in detail regarding the procedure followed when an injured employee reports to their facility for a drug screen, and stated that she signed a chain of custody form as the collector of the specimen and upon release of the specimen to the testing laboratory. Vaughn testified that the chain of custody form was placed inside the sealed bag, and contained instructions that the laboratory test for tetrahydrocannabinol, cocaine, amphetamines, phencyclidine and opiates.
She stated that the “log book” kept by La Med Clinic showed that the specimen was picked up by Margaret Norwood, then transported to the testing laboratory at Nichols Institute Substance Abuse Testing Laboratory (NISAT). James Callies, the scientific director at NISAT, was also qualified as an expert in drug testing procedures. Callies testified that NISAT was certified by NIDA and also by the College of American Pathologists for forensic urine drug testing. He outlined the general procedures utilized at the laboratory in handling, processing, and testing urine specimens, and testified that the EMIT test performed on Thompson’s specimen was positive for the marijuana drug group, and that a confirmation test revealed 144 nano-grams per milliliter of tetrahydrocannabi-nol (THC) metabolite, the primary active ingredient in marijuana. He further noted that NIDA guidelines specify that readings in excess of 15 exclude the possibility of passive inhalation.
James Richardson, the assistant manager at Capital Steel, also testified. He stated that prior to the accident, Thompson had admitted to occasional use of marijuana, after Thompson was mistakenly administered a drug test which was positive for marijuana. Richardson stated that after the injury, Thompson again admitted occasional use of marijuana. On cross-examination, Richardson stated that in September of 1989, Capital Steel adopted a policy that any employee who was injured in an on-the-job accident would be administered a drug screening test. He further stated that Thompson was discharged because testing of the urine sample revealed the presence of drugs in Thompson’s system. He stated that the company position was that the drugs caused the accident as indicated by the fact that Thompson was feeding material into the machine through the wrong end at the time.
Thompson also testified concerning the accident. He stated that the accident occurred while he was filling a work order for 300 pieces of cut steel, in which each piece was to be one-half inch thick, four inches wide and six inches long. Thompson stated that the workers were required to cut steel from “scrap” metal whenever possible. If there was no “scrap” available, then the employee was to cut from twenty foot sheets of metal. Thompson testified that he attempted to make a cut from the piece he was working with, but realized the piece of steel was short. Therefore, he was forced to place the steel in the machine through the wrong end. While doing so, his hand was crushed by the steel cutting machine.
Thompson explained that he was trained and supervised by Rusty Gautheaux and stated that Gautheaux had instructed him on how to use the machinery. He testified that Gautheaux specifically advised him that if a piece of steel was short, it should be cut from the other side of the machine. Thus, at the time of the accident, although he was operating the machine incorrectly, Thompson was following the instructions of his supervisor.
Thompson testified that the accident happened on a Thursday, and that he immediately reported the accident to Gautheaux. He was taken to La Med Clinic and treated, *181 and returned to work within two hours. He worked the remainder of the day, the next day, and the following Monday, performing the same tasks and working at the same cutting bench. However, his right hand continued to swell and he returned to La Med Clinic the following Thursday. He was advised to see a specialist, was subsequently hospitalized for five days, and underwent surgery.
Thompson stated that he had not been drinking or using drugs on the day of the accident or the previous evening and denied being intoxicated at the time of the accident. He stated that he had smoked marijuana only once before, approximately 1½ years prior to the accident. In discussing this prior incident, Thompson stated that he had tested positive for marijuana and was then told by the company that he should cease using drugs, as the company would soon be implementing a policy concerning drug use by employees. Thompson further stated that although he had been in the presence of others who smoked marijuana, he had not smoked marijuana since the original incident. Finally, Thompson specifically denied any statements to Jim Richardson, after the accident, that he was still using marijuana.
Louise Thompson, plaintiffs wife also testified and stated that she drove her husband to work daily and had driven him to work on the date of the accident. She stated that he did not smoke marijuana on the way to work and was not intoxicated on that morning. She further testified that she had never seen her husband use marijuana.
After hearing all of the testimony, the hearing officer concluded that Thompson was entitled to compensation benefits and payment of medical expenses, and awarded Thompson medical expenses in the amount of $7,975.51 and compensation benefits for sixteen weeks in the amount of $3,341.44.
Defendants appeal, urging the following assignments of error:
I.The hearing officer’s decision in denying the intoxication defense was an error of law, because the appellants proved by showing scientifically accurate testing and establishing a clear chain of custody that Johnny Thompson’s urine sample tested positive for drugs. Appellants are statutorily entitled to the presumptions that claimant was intoxicated at the time of the accident and that the intoxication caused the accident, thereby barring claimant from receiving worker’s compensation benefits.
II. The hearing officer was clearly wrong in finding that the claimant rebutted the presumption that his intoxication caused his accident, because the claimant admitted he disregarded the warnings and instructions on the steel cutting machine and injured himself by failing to react quickly enough to avoid injury to his hand.
III. In the alternative, if the appellants’ defense should be rejected and the claimant awarded indemnity benefits for disability from his accident, then the award should be reduced to nine weeks from sixteen weeks, since claimant’s treating physician released him to return to work nine weeks after the accident.
APPLICABLE LAW
LSA-R.S. 23:1031 A provides in pertinent part:
If an employee not otherwise eliminated from the benefits of this Chapter receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated. (Emphasis added.)
However, LSA-R.S. 23:1081 provides that no compensation shall be allowed for an injury caused by the employee’s intoxication at the time of the injury. LSA-R.S. 23:1081(2) provides:
In determining whether or not an employer shall be exempt from and relieved of paying compensation because of injury sustained by an employee for any cause or reason set forth in this Subsection, the burden of proof shall be upon the employer.
*182 Acts 1989, no. 454, § 3 amended LSA-R.S. 23:1081 to provide for certain presumptions in favor of the employer asserting the defense of intoxication.[3]
LSA-R.S. 23:1081(5), as added by Act 454, provides:
If there was, at the time of the accident, evidence of either on or off the job use of a nonprescribed controlled substance as defined in 21 U.S.C. [§] 812, Schedules I, II, III, IV, and V, it shall be presumed that the employee was intoxicated.[4]
The employer also has the right to administer drug and alcohol testing, or to demand that the employee submit to drug and alcohol testing immediately after the alleged on-the-job accident. LSA-R.S. 23:1081(7)(a).
LSA-R.S. 23:1081(8) outlines the employer’s burden of proof and qualifies the use of drug screens in meeting this burden, as follows:
In order to support a finding of intoxication due to drug use, and a presumption of causation due to such intoxication, the employer must prove the employee’s use of the controlled substance only by a preponderance of the evidence. In meeting this burden, the results of employer-administered tests shall be considered admissible evidence when those tests are the result of the testing for drug usage done by the employer pursuant to a written and promulgated substance abuse rule or policy established by the employer.
The statute also provides that causation is presumed once the employer has met the burden of proving intoxication at the time of the accident. As provided in subsection 12 of R.S. 23:1081:
Notwithstanding any language to the contrary, once the employer has met the burden of proving intoxication at the time of the accident, it shall be presumed that the accident was caused by the intoxication. The burden of proof then is placed upon the employee to prove that the intoxication was not a contributing cause of the accident in order to defeat the intoxication defense of the employer.
DISCUSSION
The Intoxication Defense
(Assignment of Error Numbers One and Two)
Defendants first contend that the hearing officer erred in denying the intoxication defense because appellants proved through scientifically accurate testing and a clear chain of custody that Thompson’s urine tested positive for drugs. Thus, defendants claim, they are statutorily entitled to the presumption that Thompson was intoxicated at the time of the accident and that the intoxication caused the accident, barring Thompson’s claim.
The hearing officer’s decision states, in pertinent part, as follows:
... There is no doubt but that the employer collected its evidence in accordance with the statute and is entitled to a presumption that the claimant was intoxicated when the accident occurred. The amount of cannibanoids found in the claimant [sic] system rules out passive inhalation but it is not the presumption in subsection 8, wherein the law provides that the testing for drug use was done pursuant to a written and promulgated substance abuse rule or policy. There was no proof that such a policy existed. Therefore, the presumption is rebuttable and, in the opinion of the undersigned, has been rebutted by the claimant who performed his job with the approval of his employers before and after the accident. ...
We agree with the hearing officer’s conclusion that the employer collected and tested the urine sample in accordance with the standards expressed in subsection 9 of R.S. 23:1081. Moreover, we find no error *183 in the remainder of the judgment. Although not artfully stated, the hearing officer concluded that the test results and testimony related thereto were inadmissible pursuant to LSA-R.S. 23:1081(8), in the absence of a showing that the collection of. the sample and testing for drug usage was done by the employer pursuant to a written and promulgated substance abuse rule or policy established by the employer. Thus, the test results were inadmissible under subsection 8 of R.S. 23:1081 to prove the employee’s use of a controlled substance at the time of the accident; thus, defendants were not entitled to the presumptions that would otherwise apply under subsections 5 and 12 of R.S. 23:1081.
Defendants contend that the test results were highly reliable, considering the detailed testimony introduced to establish proper testing and handling of the specimen. However, there is no evidence in the record to satisfy the threshold requirement established in subsection 8 of the statute for the receipt of such testing results, namely, that the tests were conducted by the employer pursuant to a written and promulgated rule or policy established by the employer. Thus, even assuming the proper handling and processing of the specimen in accordance with subsection 9, the test results were inadmissible to prove Thompson’s use of marijuana.
Defendants assert in their brief to this court that once the test results were offered into evidence, any objection to admissibility was waived when plaintiff’s counsel failed to object. However, the failure to object to the admission of certain evidence does not require that the trier of fact consider that evidence. We find no error in the hearing officer’s refusal to consider the test results, presented without objection, where the statute specifically provides that test results are admissible provided the testing was done pursuant to a written and promulgated rule or policy set forth by the employer. See Martin v. Lafayette Parish Policy Jury, 308 So.2d 309 (La.App. 3rd Cir.), writ denied, 310 So.2d 851 (La.1975).
Thus, we find no merit in the defendants’ contention that the hearing officer committed legal error. Accordingly, defendants’ first assignment of error lacks merit.
Defendants next contend that the hearing officer manifestly erred, or was clearly wrong, in finding that Thompson rebutted the presumption that his intoxication caused the accident, considering Thompson’s admission that he disregarded the warnings and instructions on the steel cutting machine. Thus, defendants argue, Thompson injured himself by failing to react quickly enough to avoid injury tó his hand.
After finding that defendants were not entitled to the aid of any statutory presumption of intoxication and causation in meeting the burden of proof required under subsection 8, the hearing officer concluded that defendants failed to prove intoxication, and that plaintiff rebutted the intoxication defense. The hearing officer noted that plaintiff was able to continue performing his job tasks immediately after the accident and for several days thereafter, with the approval of his supervisors.
We find no error in the conclusions reached by the hearing officer. Without the presumption of intoxication, the record before this court contains no evidence that plaintiff was intoxicated at the time of the accident, or that the accident was caused by plaintiff’s intoxication. As the hearing officer properly found, the fact that his employers allowed him to continue working after the accident negates any inference that he was intoxicated when the accident occurred.
Considering the testimony that plaintiff was able to satisfactorily complete his customary job duties after the accident, the defendants failed to prove by a preponderance of the evidence that plaintiff was intoxicated or that the intoxication was a cause in fact of the accident. In view of Thompson’s straightforward testimony that he was engaged in the misuse of the machine pursuant to the instructions of his immediate supervisor, there is no evidence that the misuse and resulting injury was due to intoxication. To the contrary, the evidence in the record preponderates in favor of a finding that the accident and *184 Thompson’s injuries resulted from the performance of his duties in the manner specified by his supervisor and not from intoxication. It is well settled that a court of appeal may not set aside a finding of fact by a trial court of a jury in the absence of manifest error or unless it is clearly wrong, and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel its own evaluations and inferences are as reasonable. Lirette v. State Farm Insurance Company, 563 So.2d 850 (La.1990).
Considering the testimony in the record, we conclude that the hearing officer was not manifestly erroneous in concluding that defendants failed to carry their burden of proving that plaintiff was intoxicated at the time of the accident, or that the use of marijuana by Thompson resulted in intoxication causing the accident.
Thus, we find no merit in defendants’ second assignment of error.
Duration of Benefits
(Assignment of Error Number Three)
Defendants argue in the alternative that if this court concludes the claimant is entitled to compensation, the hearing officer erred in awarding disability benefits for sixteen weeks when the medical reports indicate that Thompson was released to return to work nine weeks after the accident. We agree.
It is undisputed that the accident occurred on March 15, 1990, and that the appropriate weekly rate of disability benefits is $208.84. The medical evidence in the record shows that Thompson was discharged from the care of his treating physician on May 17, 1990, and released without restrictions. Moreover, Thompson testified that he was unable to work for approximately two months. Therefore, we find that the hearing officer erred in awarding disability benefits for a period of sixteen weeks, and conclude that plaintiff was entitled to disability benefits for a period of nine weeks. Accordingly, the judgment is amended to reduce the disability award from $3,341.44 to $1,879.56.
Plaintiff’s Argument
In his appellate brief, plaintiff contends that the intoxication defense contained in LSA-R.S. 23:1081 is unconstitutional because it takes away a property right and is not based on job-related misconduct. While we recognize that plaintiff attempted to assert these constitutional arguments at the trial level, we note that his plea of unconstitutionality was not specially pleaded, nor was the attorney general served with a copy of the petition. Thus, the issue of the constitutionality of the statute is not properly before this court and we decline to address it, or plaintiff’s related arguments. See Lemire v. New Orleans Public Service, Inc., 458 So.2d 1308 (La.1984).
DECREE
The judgment of the hearing officer is hereby amended to reduce the award for disability benefits from $3,341.44 to $1,879.56. In all other respect, the judgment is affirmed. Costs of this appeal are assessed one-half against the plaintiff, Johnny A. Thompson, and one-half against the defendants, Capital Steel Company and Highlands Insurance Company.
AMENDED, AND AS AMENDED, AFFIRMED.
SHORTESS, J., concurs in result.
EDWARDS, dissents and assigned reasons.

. This claim named Crawford and Company as the insurer of Capital Steel Company, Thompson's employer. Subsequently, Thompson filed a motion to substitute parties and named Highlands Insurance Company as the proper defendant.

. The matter was heard on separate dates to accommodate Thompson, who was working out of state at the time of the hearing. Thus, by agreement of the parties, defendants presented their case on January 9, 1991, and plaintiff presented his case on April 12, 1991.

. The amendment was made effective January 1, 1990. The accident herein occurred on March 15, 1990. Thus, the amendments are applicable to this case.

. 21 U.S.C. § 812 lists tetrahydrocannabinol (THC), the primary active ingredient in marijuana, as a Schedule I controlled substance.