671 So.2d 1264 (1996)
William DEAL, Plaintiff-Appellant,
v.
BANCROFT BAG, INC., Defendant-Appellee.
No. 28,188-CA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 1996.
Writ Denied June 7, 1996.
*1265 Eugene A. Ledet, Jr., Alexandria, for Appellant.
Donald Anzelmo, Monroe, for Appellee.
Before MARVIN, C.J., and BROWN and CLARK, JJ.
BROWN, Judge.
Plaintiff asserts error in the denial of his claim for workers' compensation benefits based upon a finding that he was intoxicated at the time of his workplace injury. We affirm.

FACTS
Plaintiff, William Deal, had been employed by defendant, Bancroft Bag, Inc. ("Bancroft"), for approximately five years when he injured his knee in a work-related accident on May 29, 1994. Plaintiff immediately reported the accident to his supervisor and sought medical attention. A urine sample was obtained from plaintiff for drug testing pursuant to Bancroft's written drug and alcohol abuse policy. The sample, which was tested at Bayou Laboratory in Monroe, Louisiana, showed a concentration of urinary cannabinoids of 45 nanograms per milliliter (ng/ml). This result was confirmed by Puckett Laboratory in Hattiesburg, Mississippi.
Because of the lab results, Bancroft terminated plaintiff's employment on June 27, 1994. Bancroft paid for Deal's initial visit to the medical facility following the accident; however, Bancroft refused to pay subsequent medical expenses for corrective surgery or disability benefits. Thereafter, Deal filed a claim for benefits under the Louisiana Workers' Compensation Act.
Plaintiff denied that he had consumed marijuana, stating instead that he had been passively exposed to marijuana smoke two weeks prior to the accident. Plaintiff also presented Joseph Manno, Ph.D., a toxicologist and professor of medicine, who testified concerning flaws in the chain of custody of plaintiff's urine sample. Dr. Manno stated that Bayou Laboratory deviated from recognized standards for handling test samples to such a degree that the possibility of contamination or adulteration could not be dismissed. Bancroft, however, argued that the drug test established a presumption that Deal was intoxicated at the time of the accident and that he was therefore not entitled to compensation benefits. In support of the testing process, Bancroft submitted the deposition of John Wiggins, a technician with Bayou Laboratory, concerning the handling and testing of Deal's sample.
The workers' compensation hearing officer ("WCHO") ultimately concluded that the drug collection, handling and testing procedure was trustworthy and that plaintiff was intoxicated at the time of the accident. Because plaintiff failed to rebut the presumption that his intoxication caused his accident, workers' compensation benefits were denied. Plaintiff now appeals.

DISCUSSION
LSA-R.S. 23:1081(1)(b) provides a defense to employer liability for workers' compensation benefits where an employee, working under the influence of drugs or alcohol, is injured and the injury can be attributed to the employee's intoxication. If there was, at the time of the accident, evidence of either on or off the job use of a nonprescribed controlled *1266 substance, it shall be presumed that the employee was intoxicated. LSA-R.S. 23:1081(5). The employer has the burden to prove the employee's drug use by a preponderance of the evidence. LSA-R.S. 23:1081(8). Once the employer has met this burden of proof, it shall be presumed that the accident was caused by intoxication, unless the employee shows that his intoxication was not a contributing cause of the accident. LSA-R.S. 23:1081(12).
To determine if intoxication contributed to a workplace injury, an employer has the right to administer drug and alcohol testing or demand that the employee submit himself to such testing immediately after a job-related accident. LSA-R.S. 23:1081(7)(a). The collection, handling and testing process must be trustworthy. Tests results that do not preclude a finding of passive inhalation of marijuana may not be used as a basis to deny compensation benefits. LSA-R.S. 23:1081(9).
On appeal, plaintiff recounts deficiencies in the chain of custody discussed by Dr. Manno, including the following: a discrepancy concerning the time the urine sample was collected; the absence of plaintiff's signature on sample collection documents; inconsistent identification numbers assigned to the sample; and, an incomplete account of the identity of those who handled the sample. Plaintiff also questions the accuracy of the test findings and argues that, even if reliable, the results do not preclude the possibility of passive inhalation of marijuana.
In addition to the views expressed by Dr. Manno, the hearing officer also considered the deposition of John Wiggins, the technician for the testing laboratory. Wiggins stated that plaintiff's sample was identified with a unique accession number upon receipt at the laboratory. The sample was identified by this number throughout the testing process, including the confirmation testing conducted by Puckett Laboratory. Wiggins also testified concerning the chain of custody of the urine sample and discussed records documenting the handling of the sample from the time it was collected, transported to Bayou Laboratory, tested, and transferred to Puckett Laboratory. Wiggins discussed at length the testing procedures which yielded the positive results. While Dr. Manno questioned the documentation of the procedure for handling the sample, he did not read Wiggins' deposition, examine plaintiff or test the urine.
Plaintiff testified that he did give a urine sample. The sample was collected at Glenwood Medical Center and transferred "with tamper proof seals intact." The Chain of Custody and Control Form indicates the custody of the sample from collection to its transfer to Puckett for verification. The document shows that when Wiggins, at Bayou Laboratory, obtained the sample, he noted:
"seal okayout for analysis." The WCHO's determination that the collection, handling and testing process was trustworthy is supported by the record and is not an abuse of discretion.
Plaintiff also argues that the failure of the lab report to show benzodiazephine is evidence of the unreliability of the test. The chemical's presence was a by-product of certain prescribed tranquilizers ingested by plaintiff shortly before the accident. Plaintiff reported his use of these drugs at the time his urine sample was collected. The presence of benzodiazephine was thus anticipated and was confirmed during testing. The report, however, prepared by Bayou Laboratory indicates that tests for benzodiazephine were negative. This apparent discrepancy is irrelevant and does not affect the test results concerning the presence of marijuana.
Finally, the hearing officer heard ample evidence on the issue of passive inhalation of marijuana. Plaintiff testified that he had not smoked marijuana during the three months prior to his injury; however, he stated that he had ridden in a vehicle some two weeks before the accident in which a third party smoked marijuana. Plaintiff admitted to being a long-term user of marijuana commencing while he was in junior high school. Although Bancroft's drug policy caused plaintiff to curtail his drug usage, he never completely quit smoking marijuana. More damaging was the testimony of plaintiff's own expert, Dr. Manno, who stated that a urinary cannabinoid concentration of 45 ng/ml was not *1267 consistent with mere passive exposure two weeks prior to testing.
The burden of proof on the defendant/employer was that the plaintiff/employee more probably than not used marijuana. Prestenbach v. Sentry Ins. Co., 340 So.2d 1331 (La.1976). The objective medical evidence proved that it was more probable than not that plaintiff had ingested marijuana which was present in his body at the time of the accident.
Once intoxication was proven, the burden of proof shifted to plaintiff to rebut the attending presumption that his intoxication caused the injury. The WCHO concluded that Deal did not satisfy this burden of proof. On appeal, Deal cites Johnson v. Riverplex, 609 So.2d 1005 (La.App. 5th Cir. 1992), writ denied, 613 So.2d 627 (La.1993), for the proposition that evidence of intoxication alone is insufficient to prove that the intoxication caused the accident. The Johnson decision, however, imports this jurisprudentially created standard from cases that predate amendments to LSA-R.S. 23:1081.[1] These amendments created the presumption now embodied in LSA-R.S. 23:1081(12) and clearly overruled the standard relied upon in Johnson. The hearing officer correctly applied the presumption concerning intoxication and causation of the accident and concluded that Deal had not offered a satisfactory rebuttal.

CONCLUSION
We find no manifest error in the hearing officer's findings regarding the integrity of the collection and testing process and the conclusions drawn from the test results. Deal's intoxication was supported by a preponderance of the evidence and the presumption that the injury was caused by Deal's intoxication was not rebutted. We therefore affirm the denial of plaintiff's claim for worker's compensation benefits. Costs of this appeal are assigned to plaintiff.
AFFIRMED.
NOTES
[1] LSA-R.S. 23:1081 was amended by Acts 1989, No. 454 § 3, effective January 1, 1990.