LGREMILLION, Judge.
The defendant nursing home, Camellia Garden Manor, appeals the judgment of the workers’ compensation judge in favor of the plaintiff, Herman Kennedy, finding that he suffered injuries as a result of a work-related accident and that the level of marijuana in his system did not contribute to the accident. For the following reasons, we affirm.
FACTS
Kennedy began working as an orderly for Camellia Garden on June 1, 2001. On June 27, 2001, he suffered an alleged injury to his lower back while attempting to pull a struggling quadriplegic resident back into a whirlpool chair. As a result of this injury, Kennedy suffered a bulging disc at L5-S1 with L5 radiculopathy, but his referral for a neurosurgical evaluation was denied by Camellia Garden. A post-accident urine test was positive for marijuana. Camellia Garden terminated Kennedy on August 9, 2001, because he failed a mandatory criminal background check.
On September 10, 2001, Kennedy filed a disputed claim for compensation against Camellia Garden alleging its failure to pay him workers’ compensation benefits and its refusal to authorize medical treatment. Camellia Garden answered this claim alleging that Kennedy’s claim for workers’ compensation benefits was barred because he had tested positive for marijuana use, which created a presumption that he was intoxicated at the time of the accident.
*101 This matter proceeded to a trial on the merits to determine whether Kennedy had suffered a work-related accident and whether the presence of marijuana |¡,in his system contributed to the cause of the accident. At the close of evidence, the workers’ compensation judge issued oral reasons finding that Kennedy was injured as a result of a work-related accident and that he had overcome the presumption that his intoxication was the cause of the accident. Judgment was rendered in this matter by the workers’ compensation judge on May 28, 2002. This appeal by Camellia Garden followed.
ISSUES
Camellia Garden raises three assignments of error on appeal. Basically, it argues that the workers’ compensation judge erred in finding Kennedy credible in proving that he was injured as a result of a work-related accident and that he rebutted the presumption that his intoxication was a cause in fact of his accident.
STANDARD OF REVIEW
The standard of review applied in workers’ compensation matters is set out in Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, pp. 7-8 (La.7/1/97), 696 So.2d 551, 556:
Factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Smith v. Louisiana Dep’t of Corrections, 93-1305, p. 4 (La.2/28/94), 633 So.2d 129, 132; Freeman v. Poulan/Weed Eater, 93-1530, pp. 4-5 (La.1/14/94), 630 So.2d 733, 737-38. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Freeman, 93-1530 at p. 5, 630 So.2d at 737-38; Stobart v. State, 617 So.2d 880, 882 (La.1993); Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Where there are two permissible views of the evidence, a factfinder’s choice between them can never be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 882. Thus, “if the [factfinder’s] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” Sistler v. Liberty Mut. Ins. Co., 558 | aSo.2d 1106, 1112 (La.1990).
WORK-RELATED ACCIDENT
In order to receive workers’ compensation benefits, a worker must first establish, by a preponderance of the evidence, “personal injury by accident arising out of and in course of his employment.” La.R.S. 23:1031(A). As stated in Bruno v. Harbert International Inc., 593 So.2d 357, 361 (La.1992):
A worker’s testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident; and (2) the worker’s testimony is corroborated by the circumstances following the alleged incident. West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979); Malone and Johnson, IS Louisiana Civil Law Treatise, Workers’ Compensation, § 253 (2d Ed.1980). Corroboration of the worker’s testimony may be provided by the testimony of fellow workers, spouses, or friends. Malone & Johnson, supra; Nelsonfv. Roadway Express, Inc.], supra [588 So.2d 350 (La.1991)]. Corroboration may also be provided by medical evidence. West, supra.
*102 In determining whether the worker has discharged his or her burden of proof, the trial court should accept as true a witness’s uncontradicted testimony, although the witness is a party, absent “circumstances casting suspicion on the reliability of this testimony.” West, 371 So.2d at 1147; Holiday v. Borden Chemical, 508 So.2d 1381, 1383 (La. 1987). The trial court’s determinations as to whether the worker’s testimony is credible and whether the workers has discharged his or her burden of proof are factual determinations not to be disturbed or reviewed unless clearly wrong or absent a showing of manifest error. Gonzales v. Babeo Farms[Farm], Inc., 535 So.2d 822, 824 (La.App. 2d Cir.), writ denied, 536 So.2d 1200 (La.1988) (collecting cases).
Kennedy testified that he had just removed a quadriplegic resident from the whirlpool, when he noticed that the resident, Arthur Lee, was starting to slip out of the low-backed whirlpool chair. He stated that he tried to pull Lee back up into the chair, but that Lee started struggling. He testified that the more he pulled, the more Lee struggled. Kennedy stated that he finally received help from two nurses |4assistants, Mary Leach and Maude Stephens. After getting Lee back into the chair, he testified that he felt a sharp pain and a burning in his lower back. Although he did not tell Leach or Stephens that his back hurt, he stated that it began hurting worse about forty-five minutes later. He stated that he told Barbara Jones, an LPN, that his back was hurting and she gave him three Tylenols. About an hour and a half later, Kennedy testified that he went to the medicine room and ran into Judy Langston, the director of nurses, and someone named Jennifer. He stated that he told Jennifer that he hurt his back while helping Lee, and that she gave him some Motrin for his pain. Kennedy stated that he finished his last two hours that day. However, he testified that he was unable to work the next day because of pain.
On July 29, 2001, Kennedy stated that he was only able to work about twenty-five minutes due to pain in his lower back. He stated that he told the nurse that his back was still hurting, and she told him to go home and to see a doctor. He testified that he then went home and stayed in bed until about 6:00 p.m., at which time he went to the emergency room at Rapides General Hospital. The emergency room records state that Kennedy complained of lower back pain at work two days ago.
Kennedy was examined by Dr. Robert Smith on July 30, 2001, who diagnosed him as suffering from non-specific low back pain with L5 radiculopathy secondary to lifting. An August 24, 2001 MRI revealed a large broad based central bulge at L5-S1 causing some sac compression and probably SI nerve root compression bilaterally, as the roots exit the sac. Dr. Smith recommended that Kennedy be sent for a neurosurgical evaluation, however, Camellia Garden refused | ^authorization. On August 30, 2001, Dr. Smith informed Kennedy of Camellia Garden’s refusal and recommended that he seek care in the Charity hospital system, since he had findings which needed medical attention.
Both Stephens and Leach recalled the incident where they helped Kennedy lift Lee back into his chair. However, Leach stated that the incident happened in the hall and not in the whirlpool room. Johnson did not recall Kennedy telling her that his back hurt, nor did she recall giving him the Tylenol. When asked if she was certain that she did not give him any medication that day, she stated, “Not that — not that I can remember.” When asked if she saw Kennedy on the day in question, she *103 stated, “Yes. It’s so hard to remember yesterday.” Langston testified that she filled out Kennedy’s accident report on July 29, 2001, when she first learned of his accident. She further stated that she could not recall any conversation or overhearing any conversation with Kennedy on July 27, 2001.
In finding that Kennedy satisfied his burden of proving that his back injury occurred during the course and scope of his employment with Camellia Garden, the workers’ compensation judge found that his testimony about how the accident occurred was corroborated by Leach and by the medical records. Although he pointed out inconsistencies in the evidence, such as Johnson not recalling giving him Tylenol, Langston not recalling a conversation between him and another person, and Leach stating that the incident occurred in the hall instead of the whirlpool room, the workers’ compensation judge found Kennedy very credible. Based on that, and Camellia Garden’s failure to present any evidence refuting Kennedy’s evidence that this accident caused his back injury, the workers’ compensation judge held that he | fiproved that his back injury was caused by his work-related accident. He did so, especially in view of the fact that Kennedy was able to lift patients for the two months preceding to his accident without complaints.
After reviewing the record in its entirety, we cannot say that the workers’ compensation judge erred in finding that Kennedy satisfied his burden of proof. Although there were inconsistencies in the evidence, the workers’ compensation judge considered every one of these before reaching his decision. He further found Kennedy to be very credible. Since this finding is reasonable in light of the record, we are bound by the mandates of Banks, 696 So.2d 551, and Rosell v. ESCO, 549 So.2d 840 (La.1989), and must affirm. Accordingly, this assignment of error is dismissed as being without merit.
INTOXICATION
In its next assignment of error, Camellia Garden argues that the workers’ compensation judge erred in finding that Kennedy satisfactorily rebutted the presumption that the level of marijuana in his system caused his work-related accident.
La.R.S. 23:1081(l)(b) provides that an employee may not recover compensation if his injury was caused by intoxication, unless the intoxication was related to the employer’s interests or its provision of intoxicating substances. An employee is presumed to be intoxicated if there is evidence of use of a nonprescribed controlled dangerous substance. La.R.S. 23:1081(5). In cases involving nonpres-cribed drugs, an employer need only prove the use of such drugs by the employee by a preponderance of the evidence in order to support a finding of |7intoxication. Once it has done this, there arises a presumption of causation due to intoxication. La. R.S. 23:1081(8). Drug tests performed as a result of a written and promulgated drug policy are admissible as evidence in such cases. Id. Once the employer satisfies its burden of proof, it is presumed that the accident was caused by the intoxication. The burden then switches to the employee to prove that the intoxication was not a contributing cause of the accident. La. R.S. 23:1081(12).
In this instance, Camellia Garden introduced a Substance Abuse Report Form of a drug test performed on Kennedy from a urine sample taken from him subsequent to his accident on July 29, 2001. The report states that the test result was positive for marijuana metabolite. Camellia Garden also introduced a form *104 signed by Kennedy on May 30, 2001, which is an acknowledgment by him of its drug free workplace policy and a consent to be tested. Ruth Stelly, the administrator for Camellia Garden, testified that it had a drug testing policy and that it performs post-accident drug screening whenever an accident occurs. Based on this evidence, the workers’ compensation judge held that Camellia Garden proved, by a preponderance of the evidence, the use of marijuana by Kennedy. Accordingly, it was presumed that his work-related accident was caused by his intoxication. We find no error in this finding.
The burden of proof then switched to Kennedy to rebut the presumption of intoxication. Although Kennedy admitted to the use of marijuana daily prior to his employment with Camellia Garden, he testified that he stopped such usage approximately two weeks prior to his return to work. He further stated that he was not under the influence of marijuana on July 27, 2001. However, he did state that he Chad been around family and friends who used marijuana, and that he had ridden in vehicles with friends, who also used it.
Inconclusive testimony as to Kennedy’s supposed intoxication was given by Stephens, Leach, and Langston. Stephens testified that she did not pay much attention to Kennedy’s condition that day, so as to tell what kind of state he was in. Leach stated that, although she worked on the same hall as him, Kennedy did not appear to be intoxicated. However, she did state that she did not see much of him that day. Johnson stated that it was Camellia Garden’s policy to send home any employees who appeared at work intoxicated. She stated that, had Kennedy been intoxicated, she would have clocked his work card and sent him home. She testified that she did not send him home that day.
In finding that Kennedy rebutted the presumption of intoxication, the workers’ compensation judge held that this was not the sort of accident which was caused by intoxication. He stated that the accident was caused by Lee flailing around in the chair, which was confirmed by Leach and Stephens. Since this was a finding of fact, it is reviewed under the manifest error, clearly wrong standard of review. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993). After reviewing the record, we cannot say that the workers’ compensation judge erred in finding that Kennedy rebutted the presumption of intoxication. Accordingly, this assignment of error is also dismissed as being without merit.
CONCLUSION
For the forgoing reasons, the judgment of the workers’ compensation judge is affirmed. The costs of this appeal are assessed to the defendant-appellant, | ciCamellia Garden Manor.
AFFIRMED.