Judgment rendered April 13, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,443-WCA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

RONNIE GRIFFITH                                        Plaintiff-Appellant

versus

CMR CONSTRUCTION &                          Defendants-Appellees
MAINTENANCE RESOURCES
AND LCTA WORKERS'
COMPENSATION

* * * * *

Appealed from the
Office of Workers' Compensation, District 1-E
Parish of Ouachita, Louisiana
Trial Court No. 19-07501

Brenza I. Jones
Workers' Compensation Judge

* * * * *

HUDSON, POTTS & BERNSTEIN, L.L.P.          Counsel for Appellant
By: Brian P. Bowes

THE ANZELMO LAW FIRM                        Counsel for Appellees
By: Donald J. Anzelmo
    Benjamin D. Jones

* * * * *

Before PITMAN, STEPHENS, and THOMPSON, JJ.

**STEPHENS, J.**

On October 1, 2019, claimant, Ronnie Griffith, was seriously injured when he fell through the roof of an airplane hangar at the Monroe Regional Airport while employed as a construction foreman by defendant, CMR Construction & Maintenance Resources, Inc. ("CMR").  As a result of his 30-foot fall to the concrete floor, Griffith sustained numerous broken bones and internal injuries.

Griffith filed a disputed claim for compensation on November 8, 2019, against his employer and its insurer, LCTA Workers' Compensation, seeking the authorization of medical treatment and payment of disability benefits, together with the imposition of penalties and an award of attorney fees.  Defendants filed an answer on December 16, 2019, denying that Griffith was entitled to benefits because his accident was caused by his intoxication at the time of the accident in accordance with La. R.S. 23:1081.  Defendants amended their answer to add the defense of fraud pursuant to La. R.S. 23:1208 and seek forfeiture of all benefits as well as full restitution of benefits previously paid, attorney fees, costs of litigation, and court costs.

That the accident occurred in the course and scope of claimant's employment and causation of Griffith's *injuries* were not in dispute.  The issues to be decided by the workers' compensation judge ("WCJ") were claimant's entitlement to indemnity benefits; his entitlement to medical benefits; the nature and extent of his injury; whether penalties and attorney fees were appropriate; or, whether Griffith should be ordered to forfeit all benefits and/or pay restitution, attorney fees, etc., pursuant to La. R.S. 23:1208.  However, before addressing any of these issues, the WCJ was tasked with determining whether the intoxication defense was applicable,

and if so, whether claimant could overcome the presumption of causation afforded the employer by La. R.S. 23:1081.

Most of the witness testimony was by deposition, stipulation, and/or report. The only live testimony at the Zoom videoconference trial was that of claimant Ronnie Griffith. Following presentation of the evidence and after taking the matter under advisement, the WCJ found that defendants proved that Griffith was intoxicated at the time of his accident, and that this intoxication was causally linked to the accident. The WCJ further found that claimant failed to prove that his intoxication was not a contributing cause of the accident. Therefore, his claim for benefits was denied. The WCJ also specifically found that "[a]ll other requests are denied, and this matter is dismissed with prejudice." It is from this judgment that claimant has appealed, and defendants have filed an answer to the appeal.

## DISCUSSION

### *Disqualification of Claimant for Workers' Compensation Benefits*

In his first three assignments of error, claimant asserts that the WCJ erred in relying on the following evidence to disqualify him from benefits pursuant to La. R.S. 23:1081: his employer's drug testing policy; the drug test requested by his employer, CMR, which failed to conform with Louisiana's Drug Testing Statutes, La. R.S. 49:1001, *et seq.*, and the Substance Abuse Mental Health Services Administration (SAMHSA) Guidelines; and, the expert report prepared by toxicologist William George. Griffith further urges that this evidence was insufficient to support the WCJ's conclusion that CMR was entitled to the La. R.S. 23:1081 presumption of intoxication, but if the presumption was established, then the

WCJ erred in failing to find that he introduced sufficient evidence to rebut the presumption of intoxication.

Defendants contend that they established a *prima facie* case that Griffith was intoxicated at the time of his accident—all they were required to do under La. R.S. 23:1081(5) and (8) for CMR to be entitled to a presumption that claimant was intoxicated and that this intoxication was a cause of his accident was show that claimant was intoxicated due to drug use by a preponderance of the evidence—and the record supports the trial court's finding that they did so. Furthermore, urge defendants, the record supports the trial court's determination that claimant failed to overcome this presumption.

As noted above, that the accident occurred in the course and scope of claimant's employment and causation of Griffith's **injuries** were not in dispute. The first issues addressed by the WCJ in this case were whether the intoxication defense was applicable and, if so, whether claimant could overcome the presumption of causation provided the employer by this defense.

Louisiana Revised Statute 23:1081 prohibits workers' compensation benefits for injuries caused by an injured employee's intoxication at the time of the injury. La. R.S. 23:1081(1)(b). The employer has the burden of proving the intoxication. La. R.S. 23:1081(2). In order to support a finding of intoxication to drug use, and a presumption of causation due to such intoxication, the employer must prove the employee's use of a controlled dangerous substance, such as marijuana, by a preponderance of the evidence. La. R.S. 23:1081(8); *Nivens v. Fields*, 46,524 (La. App. 2 Cir. 11/16/11), 79 So. 3d 1144.

In meeting this burden, the results of employer-administered tests shall be considered admissible evidence when these tests are the result of the testing for drug usage done by the employer pursuant to a written and promulgated substance abuse rule or policy established by the employer. La. R.S. 23:1081(8). An employer has the right to administer drug and alcohol testing or demand that the employee submit himself to drug and alcohol testing immediately following an alleged job accident. La. R.S. 23:1081(7)(a); *Beck v. Newt Brown Contractors, LLC*, 46,523 (La. App. 2 Cir. 9/21/11), 72 So. 3d 982, *writ denied*, 2011-2352 (La. 12/2/11), 76 So. 3d 1180. The collection, handling, and testing process must be trustworthy. *Nivens, supra.* If there is, at the time of the accident, evidence of either on or off the job use of marijuana, then it shall be presumed that the employee was intoxicated at the time of the accident. La. R.S. 23:1081(5); *Nivens, supra*; *Deal v. Bancroft Bag, Inc.*, 28,188 (La. App. 2 Cir. 4/3/96), 671 So. 2d 1264, *writ denied*, 1996-1102 (La. 6/7/96), 674 So. 2d 977.

Once the employer has met the burden of proving that the employee was intoxicated at the time of the accident, it is also presumed that the employee's injury was caused by his intoxication. La. R.S. 23:1081(12). The burden then shifts to the employee to show by a preponderance of the evidence that his intoxication was not a contributing cause of the accident. La. R.S. 23:1081(12); *Kennedy v. Camellia Garden Manor*, 2002-1027 (La. App. 3 Cir. 2/5/03), 838 So. 2d 99. If he does so, then the intoxication defense of the employer is defeated. *Joseph v. Georgia Pacific, LLC*, 2015-0227 (La. App. 1 Cir. 9/18/15), 182 So. 3d 163; *The Shaw Group v. Kulick*, 2004-0697 (La. App. 1 Cir. 4/8/05), 915 So. 2d 796, *writ denied*, 2005-1205 (La. 11/28/05), 916 So. 2d 148.

4

Factual findings of a WCJ are reviewed under the manifest error or clearly wrong standard of review. *Dean v. Southmark Construction*, 2003-1051 (La. 4/8/04), 870 So. 2d 112; *Smith v. Louisiana Dep't of Corrections*, 1993-1305 (La. 2/28/94), 633 So. 2d 129; *Nivens, supra; Schouest v. Acadian Construction Services*, 2015-921 (La. App. 3 Cir. 6/8/16), 193 So. 3d 595. A determination by a WCJ that an employee failed to rebut the presumption of intoxication is a factual finding that will not be overturned absent manifest error. *Romero v. La. Commerce and Trade Ass'n*, 2011-1533 (La. App. 3 Cir. 7/13/12), 96 So. 3d 699, *writ denied*, 2012-1852 (La. 11/9/12), 100 So. 3d 838. In applying the manifest error-clearly wrong standard, we must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusions were reasonable. *Stobart v. State, DOTD*, 617 So. 2d 880 (La. 1993); *Schouest*, *supra*.

Griffith first contends CMR's drug testing policy was insufficient for use under La. R.S. 23:1081, and the WCJ erred in relying on it to find his employer met the presumption of intoxication thereunder. It is claimant's argument that whenever a drug test is performed by an employer pursuant to its drug testing policy, that policy must be explicit and set forth the methods regarding drug testing and specify under what circumstances the employee may be required to submit to testing.

Defendants assert that Griffith's argument regarding the sufficiency (or lack thereof) of CMR's drug policy is misplaced since the drug test was not employer-administered, but was instead administered in an emergency situation by medical personnel at Ochsner LSU Health Shreveport. Furthermore, CMR urges that their drug policy meets the requirements of La. R.S. 23:1081.

CMR's Drug & Alcohol Policy is included in the record as Defense Exhibit #1.[1]  While it does not set forth with specificity the types or methods of drug testing (we note that neither La. R.S. 23:1081 nor the administrative regulations[2] promulgated in accordance with La. R.S. 23:1081(9) do), this policy informed Griffith that, as a result of his employment with CMR, he agreed to submit to "drug screening for the presence of drugs/alcohol under the conditions of reasonable suspicion, for cause/post-incident, random testing, and post-accident testing."

All that La. R.S. 23:1081 requires, it seems, is a written and promulgated substance abuse rule or policy that provides for testing for drug use, and testing performed in accordance therewith.  *See, Austin v. Fibrebond Corp.*, 25,565 (La. App. 2 Cir. 4/23/94), 638 So. 2d 1110, *writ denied*, 1994-1326 (La. 9/2/94), 643 So. 2d 149; *Joseph*, *supra*; *Robinzine v. Labor Finders*, 2006-389 (La. App. 5 Cir. 10/17/06), 943 So. 2d 1215, *writ denied*, 2006-2732 (La. 1/12/07), 948 So. 2d 153; *The Shaw Group*, *supra*; *Kennedy*, *supra*; *Fisher v. Westbank Roofing*, 1995-964 (La. App. 5 Cir. 2/27/96), 670 So. 2d 1328, *writ denied*, 1996-0809 (La. 5/10/96), 672 So. 2d 926; *Thompson v. Capital Steel Co.*, 613 So. 2d 178 (La. App. 1 Cir. 1993), *writ denied*, 617 So. 2d 936 (La. 1993).  CMR's written, promulgated substance abuse policy meets the statutory requirements.  The initial drug test was performed at the hospital upon claimant's admission as part of his care and treatment following an at-work accident.  Although not specifically

---

[1] Exhibit 1 is actually a copy of the acknowledgment or agreement to the Drug & Alcohol Policy signed by claimant Ronnie Griffith on December 10, 2013.

[2] LAC 40:I.1501, et seq., 40 LA ADC Pt. I, §1501, et seq. were promulgated in accordance with La. R.S. 23:1081(9) by the Department of Employment and Training, Office of Workers' Compensation, LR 16:851 (October 1990), and **last updated** more than 30 years ago when repromulgated, LR 17:773 (August 1991).

requested by CMR, this drug screen, nonetheless, was done pursuant to his employer's drug testing policy. This assignment of error is without merit.

Claimant next argues that CMR's requested drug test did not conform with La. R.S. 49:1005, 1011, or the SAMHSA Guidelines, and the WCJ erred in relying on it in making her factual findings in this matter.

Defendants contend that because Griffith was not tested under Title 49, its requirements, and the SAMHSA Guidelines it incorporates, are irrelevant to the instant case.

Title 49 is entitled "State Administration." La. R.S. 49:1001 is the comprehensive drug testing statute that was enacted by the legislature in 1990, with an effective date of January 1, 1991. Generally, the statute regulates the circumstances in which public sector employers, and with significant limitations, private sector employers, may engage in drug testing of employees. La. R.S. 49:1005(B) provides, in pertinent part that drug testing as provided in this Subsection shall be performed in compliance with the SAMHSA guidelines except as provided in this Chapter or ***pursuant to statutory or regulatory authority under R.S. 23:1081 et seq.***

Louisiana Revised Statute 23:1081(9) provides:

> ***All sample collection and testing for drugs under this Chapter shall be performed in accordance with rules and regulations adopted by the assistant secretary*** which ensure the following:
> …
>
> (e) Sample testing shall conform to scientifically accepted analytical methods and procedures. Testing shall include verification or confirmation of any positive test result by gas chromatography, gas chromatography-mass spectroscopy, or other comparably reliable analytical method, before the result of any test may be used as a basis for disqualification pursuant to this Section. Test results which do not exclude the passive inhalation of marijuana may not be used as a basis for disqualification under this Chapter. However, test results which indicate that the concentration of total urinary

7

cannabinoids as determined by immunoassay equals or exceeds fifty nanograms/ml shall exclude the possibility of passive inhalation.  (Emphasis added).

It is a fundamental rule of statutory construction that when two statutes deal with the same subject matter, if there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character.  *Burge v. State*, 2010-2229 (La. 2/11/11), 54 So. 3d 1110; *State v. Campbell*, 2003-3035 (La. 7/6/04), 877 So. 2d 112.  This is a workers' compensation case.  Until and unless the legislature sees fit to either amend La. R.S. 23:1081 or specifically make the Louisiana Drug Testing Act and/or the SAMHSA Guidelines applicable to drug testing in workers' compensation cases, the plain language of R.S. 23:1081(9), i.e., that "all sample collection and testing for drugs under this Chapter shall be performed in accordance with rules and regulations adopted by the assistant secretary," makes short shrift of claimant's argument to the contrary.

Defense Exhibit #2 consists of a five-page excerpt of claimant's hospital records that were certified under La. R.S. 13:3715; this exhibit contains the results from a urine drug screen panel collected from Griffith on the date of the accident shortly after his arrival at the hospital.  The analysis of the sample returned a positive finding for cannabinoids or marijuana.  For a test to be used as the basis for a forfeiture of benefits under La. R.S. 23:1081(9)(e), there must be "verification or confirmation of any positive test result by gas chromatography, *gas chromatography-mass spectroscopy*, or other comparably reliable method."

Defense Exhibit #3, admitted into evidence by agreement of the parties, is a copy of the report detailing results of the confirmatory test conducted by LabCorp on Griffith's urine sample.  This report identifies that

8

the sample was obtained from University Health in Shreveport, contains claimant's name and date of birth, the date of collection, and the same patient ID number contained at the bottom of the pages of the Ochsner LSU health records entered into evidence as Exhibit #2.  The LabCorp results show compliance with La. R.S. 23:1081(9)(e)'s requirement for confirmatory testing—the method for confirmation of the positive test result was GC/MS, which stands for gas chromatography/mass spectroscopy.  Specifically, the reported test result was >400 nanograms of total cannabinoids per milliliter, which is more than eight times the 50 ng/ml threshold to exclude the possibility of passive inhalation of marijuana as set forth in La. R.S. 23:1081(9)(e).

The results from the initial test performed at Ochsner LSU Shreveport and the confirmatory test done by Labcorp constituted *prima facie* evidence of Griffith's intoxication at the time of the accident as set forth in La. R.S. 23:1081(5) and (8).  At this point, it was incumbent upon claimant to rebut the presumption of intoxication by showing that the intoxication was not a contributing cause of the accident.  La. R.S. 23:1081(12).

In his third assignment of error, Griffith argues that Dr. William George's report was not supported by the evidence, and it was error for the WCJ to rely on it to disqualify him from benefits.

Defendants assert that claimant failed to offer any expert evidence to counter the opinions expressed by Dr. George, and did not offer any other scientific evidence in support of his position.

The following is excerpted from the WCJs' reasons for judgment:

> Claimant testified during the video conference proceedings …
> that he and a crew were working on an airplane hangar at the
> Monroe Regional Airport.  The job required them to remove

9

thin sheets of metal roofing and to replace them with new sheets of metal. The old roof had skylights that also required replacement. They were to be removed and covered with new sheets of metal. During the process, the old skylights were to be covered with old sheets of metal that were removed from the roof. Each skylight was to be covered with a steel sheet that was fastened down. [Griffith] contends the crew came down from the roof sooner than expected. Therefore, he went up on the roof to inspect their work. Upon arrival, he noticed some screws had not been fastened properly. He contends a sheet popped up and caused him to trip and to fall through one of the skylights.

Additional testimony was presented through depositions. Lance Stephenson was a co-employee of Claimant. [Stephenson stated] they had a helper who took a piece of tin up when he was not supposed to. He described the skylights as being practically the same color as the roof. According to [Stephenson], they were not very visible. He testified Claimant stepped backwards and fell through the roof. He [stated] the fall was due to the actions of the helper.

Jacob Cormier is also a co-employee of Claimant. According to him, someone removed the cover sheet from the skylight and Claimant fell through. According to Cormier, the sheets were not to be removed from the skylights at the time they were removed. He testified, "[I] watched him pass me by, and the next minute [Claimant] was gone." He [stated] he saw Claimant fall because he was only a foot or two away from him. He contends Claimant did not trip and fall as alleged by Claimant.

Kevin Lloyd Mosely is another co-worker of Claimant. He also worked on the job involving the roof of the hangar at the airport. According to Mr. Mosley, you could tell the difference between the skylights and the metal roof they were replacing. He testified that the roof was a brownish color while the skylight was a yellowish color. Mr. Mosley also testified that the claimant was aware that the cover that was over the skylight had been removed. According to Mr. Mosley, just before the accident Claimant was working right beside the skylight. He was about two feet away from it while screwing down a piece of tin. He [stated] they were pulling up the tin. The skylight was uncovered. They stopped to grab a screw gun so that they could hang one more sheet, and then he heard Claimant had fallen. He [stated] Claimant saw them remove the cover. He contends the cover was removed by him and another guy. He also [testified] Claimant was told that the tin had been removed from the skylight.

Beto Elizondo is the owner of CMR Construction. He was Claimant's supervisor. He testified via deposition. He testified there was a difference in the color of the skylights and the steel sheets. He also testified that his investigation supported the fact that Claimant lost his balance and fell.

Defendant's Exhibit 6 is a report of Dr. William George, an expert in the field of pharmacology and toxicology. It is his opinion that Claimant was an acute/chronic user of marijuana who more likely than not would have been impaired by cannabinoids or marijuana at the time of his accident when he fell through the skylight on the roof of the hangar.

A review of the testimony makes it clear that there are varying descriptions of how the accident in this case occurred. There is testimony that the skylight and the sheets of metal were similar in color. There is testimony that Claimant tripped or lost his balance, thereby causing his fall. There is also testimony the Claimant knew the piece of tin previously covering the skylight had been removed.

Nevertheless, it is also clear … the requirements of Louisiana Revised Statute 23:1081(12) have not been met. Defendants met their burden of proving intoxication. In addition, the expert report of Dr. William George linked the intoxication to the cause of the accident. There is a lack of any medical evidence or expert opinion that contradicts the opinion of Dr. George. Thus, in order to defeat the intoxication defense of his employer, Claimant was required to prove that the intoxication was not a contributing cause of the accident. In this case he did not. The testimony of his co-workers failed to establish the absence of intoxication and the determining factor that led to Claimant's fall. This Court notes that while the skylight and the tin may have been similar in color, they were certainly distinguishable in size, shape, and texture. According to Mr. Elizondo, the skylights were made of fiberglass. It appears Claimant was simply not looking where he was stepping. His failure to do so does not contribute to his burden of proving intoxication was not a contributing cause of the accident.

We have reviewed the record in its entirety, and while this Court

would have found otherwise had it been the fact-finder,[3] we cannot say the

---

[3] We note that all four of claimant's co-workers witnesses testified unequivocally that Griffith exhibited no signs of having been under the influence of marijuana on the day of the accident, i.e., he did not have bloodshot eyes, did not smell of marijuana, was not stumbling or clumsy, and had no problems getting onto or walking around the roof.

WCJ was manifestly erroneous or clearly wrong in finding that Griffith failed to prove that intoxication was not a contributing cause of the accident.

### *Rejection of La. R.S. 23:1208 Fraud on Part of Claimant*

In its answer to the appeal filed by claimant Ronnie Griffith, CMR contends that the WCJ erred in failing to make a determination on the merits of its claim that Griffith committed fraud as defined by La. R.S. 23:1208. According to CMR, Griffith lied about his past use of marijuana and also claimed to have stopped smoking marijuana. Both of these statements were proven false by Dr. George's report. It is CMR's contention that claimant should be ordered to forfeit all future benefits and pay restitution of any and all benefits previously paid to him or on his behalf for his false representations and statement.

Griffith asserts that in order for CMR to be entitled to a finding of fraud under La. R.S. 23:1208, it must establish a false statement or representation willfully made for the purpose of obtaining or defeating any benefit or payment. Because defendant failed to show any inconsistency, and its means of challenging Griffith's statements was not permitted (i.e., use of an expert's report to challenge Griffith's credibility), the WCJ did not err in rejecting this claim.

Louisiana Revised Statute 23:1208 authorizes forfeiture of benefits upon proof that (1) there is a false statement or representation; (2) it is willfully made; and (3) it is made for the purpose of obtaining or defeating any benefit or payment. *Resweber v. Haroil Construction Co.*, 1994-2708 (La. 9/5/95), 660 So. 2d 7; *Beck*, *supra*; *Freeman v. Chase*, 42,716 (La. App. 2 Cir. 12/5/07), 974 So. 2d 25. Forfeiture is a harsh remedy and must be strictly construed. *Wise v. J.E. Merit Constructors, Inc.*, 1997-0684 (La.

12

1/21/98), 707 So. 2d 1214; *Beck*, *supra*; *Freeman*, *supra*. An inadvertent and inconsequential false statement will not result in the forfeiture of benefits. *Beck*, *supra*; *Freeman*, *supra*. La. R.S. 23:1208 does not penalize any false statement, but only those willfully made for the purpose of obtaining benefits. *Resweber*, *supra*; *Beck*, *supra*. The WCJ's finding or denial of forfeiture will not be disturbed on appeal absent manifest error. *Id.*; *Freeman*, *supra*.

The fact that the WCJ declined to specifically address this issue in its judgment (which we note was approved as to form by both attorneys) does not mean she did not rule on defendant's claim. As noted by the Louisiana Supreme Court in *In re McCool*, 2015-0284 (La. 6/30/15), 172 So. 3d 1058, 1075, *cert. denied*, 577 U.S. 1120, 136 S. Ct. 989, 194 L. Ed. 2d 6 (2016), it is well established that those matters not expressly granted in a judgment or order of a court are considered denied. *See also, M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 2007-2371 (La. 7/1/08), 998 So. 2d 16; *Bradley v. St. Francis Medical Center*, 51,572 (La. App. 2 Cir. 9/27/17), 244 So. 3d 722; *Wynn v. Luck*, 47,314 (La. App. 2 Cir. 9/26/12), 106 So. 3d 111; and, *Anthony's Auto Sales, Inc. v. Shephard*, 600 So. 2d 125 (La. App. 2 Cir. 1992).

We examined the WCJ's factual findings under the manifest error-clearly wrong standard of review and found that the record supported her conclusion that claimant failed to rebut the presumption of intoxication in this case; the same standard of review is applicable to the factual findings in support of her denial of CMR's fraud claim. The record supports the WCJ's determination that there were no misrepresentations made willfully and for the purpose of obtaining benefits. We find no error in the WCJ's conclusion that defendant failed to carry its burden of proof on this issue.

13

**CONCLUSION**

For the reasons set forth above, the judgment of the workers'

compensation judge is affirmed.  Costs of this appeal are assessed equally

between claimant, Ronnie Griffith, and defendants, CMR Construction &

Maintenance Resources and LCTA Workers' Compensation.

AFFIRMED.